*In re* ESTATE OF ROSE MYERS, Deceased—(Robert Myers, Petitioner-Appellant, *v.* Sherry Myers *et al.*, Respondents-Appellees).

First District (4th Division)   Nos. 83—629, 83—995, 83—996 cons.

Opinion filed December 29, 1983.—Rehearing denied January 26, 1984.

Ziemba, Rozmarek, Hammer, of Chicago (Andrew A. Ziemba, of counsel), for appellant.

Feiwell, Galper & Laskey, Ltd., of Chicago (Michael Braun and Nancy Barrett, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner Robert Myers appeals the trial court's ruling that his action to set aside an antenuptial agreement executed in 1972 was barred by the running of the five-year statute of limitations, the court's subsequent denial of his application for a surviving spouse's award and its order dismissing the balance of his complaint. We affirm.

Robert Myers and Rose Keller executed an antenuptial agreement on September 26, 1972. The agreement, which included a detailed list of each of the parties' properties, provided that each party retained the full right to control, manage and dispose of his or her own prop-

erty. In addition, each party released all rights and claims in and to the property of the other, and further released and waived all rights of administration and renunciation. Upon the death of either party, the survivor would receive nothing from the estate of the deceased spouse. The parties were married shortly thereafter on October 1, 1972, at which time Robert was 66 years of age and Rose was 69.

In 1976 Rose became ill, and she entered a nursing home in July of that year. During this period Rose's sister, Evelyn Brown, managed all of Rose's financial affairs and signed checks on Rose's behalf pursuant to a written power of attorney. Both Evelyn and Robert petitioned the court to become conservators of Rose's estate in November of 1976, however only Evelyn, along with the Northern Trust Bank, was so appointed on March 22, 1977, at which time Rose was adjudicated incompetent. At the same time both Evelyn and Robert were appointed co-conservators of Rose's person.

Rose died five years later on March 4, 1982. Her will, dated January 20, 1975, was admitted to probate on April 15, 1982. Evelyn, Rose's nephew, and the nephew of Rose's late husband, Milton Keller, were named executors. Approximately half of the estate was bequeathed to the children and the family of Milton Keller in various percentages. The remaining half was to be distributed to Evelyn and Evelyn's family. The will also provided for a bequest of $10,000 to Robert Myers, notwithstanding the parties' mutual antenuptial agreement to waive all rights in each other's estates.

On May 28, 1982, petitioner filed a three-count complaint against respondents, beneficiaries under his deceased wife's will. Count I was premised on the decedent's alleged lack of testamentary capacity and count II on alleged undue influence exerted on the decedent during the preparation of her will. Count III sought to set aside the antenuptial agreement on the basis of misrepresentation, designed concealment and fraud. Count III was severed from the other counts, it being determined that an adjudication of that count would determine petitioner's interest, if any, necessary to set aside the will. After considering the evidence and having heard extensive arguments, the trial court on February 10, 1983, granted respondents' amended motion for summary judgment on count III. The court subsequently entered orders denying petitioner's application for surviving spouse's award, and granting respondents' motion to dismiss the remaining counts of the complaint. All three orders are now appealed from.

We agree with the trial court's assessment that an initial determination of petitioner's rights under the prenuptial agreement is necessary to determine his standing to bring the remaining counts. In

count III, petitioner alleges that he was misled as to the purpose of the antenuptial agreement, the decedent having told him that it was merely a "face saving" device, not meant to become operative, and that she would destroy it shortly after the parties' marriage. Petitioner also alleges that he was physically unable to read the agreement at the time of its signing and that its contents were not explained to him. Lastly, he alleges that the decedent designed to conceal from him the true nature and extent of her property.

Prior to entering its order on February 10, the trial court entertained oral arguments on respondents' motion on three separate occasions, beginning on January 11, 1983. Respondents argued that petitioner's claim was barred under either 13—205 or 13—215 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 13—205, 13—215). The former section which would apply generally to a cause of action to set aside an antenuptial agreement, provides that the action shall be commenced within five years after the accrual of plaintiff's cause of action. The latter section acts as a tolling provision in cases of fraudulent concealment, and provides that in such instances an action may be commenced at any time within five years of discovery of the existence of the cause of action. Respondents' motion was supported by the discovery deposition of Robert Myers, in which he testified that he requested and received a copy of the antenuptial agreement in July of 1976, more than five years before he filed the instant action. Specifically, petitioner stated that he requested a copy "right after I saw that I was going to have trouble with the estate, with the self-appointed conservators, *** [T]hat would have been 1976, about July. *** When Rosie went into the nursing home. *** I requested a copy and got it. In fact, I was told to contact Mr. Harris, which I did, and he mailed me a copy and I gave it to my lawyer at that time, who was Sam Wexler." Petitioner did not then, or at any subsequent time during these proceedings file any affidavits or other competent evidence to controvert his deposition testimony. The court orally granted respondents' motion, finding that to the extent that the allegations of count III constituted an alleged promise of the decedent that the antenuptial agreement would be destroyed shortly after the parties' marriage, petitioner received notice approximately four years later when he got a copy of the agreement, that the document had not in fact been destroyed. The court further noted that once the decedent was adjudicated incompetent in March of 1977, she thereafter lacked the mental capacity to rescind the agreement and consequently, the statute began to run on that date.

Thereafter, on January 21, 1983, petitioner presented his motion

to reconsider and vacate the order of January 11. The motion was premised solely on the argument of petitioner's attorney which purported to raise an ambiguity in petitioner's assertions as to his receipt of the agreement. It was argued that in light of petitioner's advanced age and limited education, his reference to "conservators," who were not actually appointed by the court until March of 1977, must lead to the conclusion that petitioner did not receive the agreement until July of 1977, and not in 1976 as he mistakenly testified. It was also argued that the copy which petitioner then received from Harris, the drafting attorney, had no direct connection with the then current existence of the antenuptial agreement. The trial court then reconsidered its earlier oral ruling and denied respondents' motion for partial summary judgment, granting them leave to amend the motion and granting both sides leave to file additional evidence in support thereof.

Respondents subsequently filed their amended motion for summary judgment which was argued on February 10, 1983. The motion once again averred that petitioner received the agreement in 1976, and was supported by the corroborating affidavits of Evelyn Brown and Charlotte Wieca, Harris' secretary. In addition, the motion averred that the issue of whether petitioner had any interest in his wife's estate, in light of his execution of the antenuptial agreement, was discussed in open court during the conservatorship proceedings. This fact was corroborated by the attached deposition testimony of Gregory Gelderman, who was petitioner's attorney of record beginning on or before December of 1976 and who represented the petitioner at those proceedings. The trial court sustained respondents' motion for partial summary judgment on count III, reiterating its belief that, in light of the evidence before it, the latest possible date on which the statute of limitations began to run was with the appointment of the conservators in March of 1977.

Petitioner argues on appeal that the trial court erred in granting summary judgment because the date of his receipt of the antenuptial agreement and the date on which he discovered or knew of the existence of the elements necessary to constitute his cause of action to set aside the agreement for fraud were never precisely pinpointed. He therefore concludes that the statute of limitations did not begin to run until the time when his wife's will was admitted to probate in April of 1982.

Petitioner's arguments, however, ignore the basic law of summary judgment, which shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving

party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005; *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 425 N.E.2d 1055, *appeal denied* (1981), 85 Ill. 2d 582.) It is also elementary that since well-alleged affidavits in support of motions for summary judgment are substitutes for testimony, they must be taken as true if left uncontroverted by counteraffidavit, "notwithstanding the existence of contrary averments in the adverse party's pleadings which merely purport to establish *bona fide* issues of fact." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) In this context, the same rule would apply to discovery depositions, which may be used in evidence "for any purpose for which an affidavit may be used." (See 87 Ill. 2d R. 212(a)(4); see also *Sierens v. Clausen* (1975), 60 Ill. 2d 585, 328 N.E.2d 559; *Moreno v. Joe Perillo Pontiac, Inc.* (1983), 112 Ill. App. 3d 670, 676, 445 N.E.2d 1184.) Where, as here, petitioner has not contradicted by competent evidence a single fact material to the disposition of respondents' motion, there is no question but that those facts set forth in respondents' exhibits must stand as admitted (*Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 385). Those facts include petitioner's deposition admission of receipt in July of 1976, along with the testimony of Gelderman leading to the inescapable conclusion that petitioner was on notice of the continuing existence of the agreement no later than March of 1977.

▮▮ Petitioner next argues that the usual requirement to exercise due diligence to discover fraud is excused where the parties stand in a confidential or fiduciary relationship, tolling statute of limitations until only at such time as actual knowledge of the deceit is acquired. We believe that *In re Estate of Dykema* (1980), 89 Ill. App. 3d 741, 412 N.E.2d 13, *appeal denied* (1981), 83 Ill. 2d 570, a case cited by respondents, is directly on point. In that case the trial court's dismissal, based on the five-year statute of limitations, of a widow's complaint to set aside her late husband's will and an antenuptial agreement executed by the parties was affirmed. Plaintiff's allegations there were substantially the same as in the instant case. On appeal, she argued that fraudulent concealment of the nature and extent of the decedent's property warranted setting aside the antenuptial agreement, that engagement to marry constitutes a fiduciary relationship and imposed on the deceased a fiduciary duty of full disclosure, that in cases of fraudulent concealment, the statute of limitations is tolled until the time of discovery, and that there exists a judicial interpretation in cases of this sort requiring the defrauded party to exer-

cise due diligence where the fraudfeasor stands in a fiduciary relationship with the defrauded party. The appellate court in *Dykema* looked to two earlier supreme court decisions where the requisite due diligence had been excused, and concluded that an essential element in both of those decisions was that the defrauded party had attributed his failure to discover the fraud to the trust and confidence he had placed in the fraudfeasor. (See *Keithley v. Mutual Life Insurance Co.* (1916), 271 Ill. 584, 111 N.E. 503; *Vigus v. O'Bannon* (1886), 118 Ill. 334, 8 N.E. 78.) Thus in order to assert that the statute of limitations was tolled, the *Dykema* court concluded that plaintiff must aver either (1) that the fraud could not have been sooner discovered with ordinary diligence, or, (2) that the trust and confidence she placed in the fiduciary prevented her from sooner discovering the fraud, and this she had failed to do. While the plaintiff in *Dykema* had been granted leave to amend her complaint, she elected to stand on her pleadings and was thus dismissed. In the instant case, petitioner urges that he was unjustly denied leave to amend his complaint at the time that the trial court granted respondents' motion for partial summary judgment. We find that the allegations set forth in petitioner's complaint are insufficient under the rule enunciated in *Dykema* but that, given the uncontroverted evidence before us, petitioner would be unable, as a matter of law, to make those allegations necessary to toll the running of the statute of limitations. The trial court's refusal to grant petitioner's motion to amend did not therefore constitute an abuse of discretion.

Based on the foregoing, we hold that respondents' motion for summary judgment on count III of petitioner's complaint was properly granted, and consequently, that the remaining counts of petitioner's complaint were properly dismissed.

Affirmed.

ROMITI, P.J., and JIGANTI, J., concur.