SAM JOHNSON, Plaintiff-Appellant and Cross-Appellee, v. MIGUEL G. ORTIZ, Defendant (Debbie Green, Defendant-Appellee and Cross-Appellant).

First District (1st Division) No. 1—92—0257

Opinion filed April 12, 1993.

Creswell, Fares, Ryan, Frost & Bijak, of Chicago Heights (David J. Fares and Karenne A. Giannini, of counsel), for appellant.

Bullaro, Carton & Stone, of Chicago (James R. Branit, Thomas A. Carton, and Donald E. Green, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Sam Johnson filed a two-count complaint seeking damages for injuries sustained on January 6, 1989, in Calumet City, Illinois, when his car was hit by the car driven by codefendant Miguel Ortiz, who was allegedly under the influence of alcohol. Defendant Debbie Green owned the vehicle which codefendant was driving at the time of the accident. Count I of the amended complaint alleged that codefendant negligently operated the car. Count II alleged that defendant negligently entrusted her car to codefendant. Defendant initially filed a special appearance to contest *in personam* jurisdiction and move to quash service. The circuit court denied defendant's motion and held that she was subject to jurisdiction in Illinois. Then, defendant filed a motion for summary judgment on count II. The circuit court ordered summary judgment in favor of defendant. Plaintiff filed this appeal. Defendant's response brief included a cross-appeal arguing that the circuit court improperly held that it had *in personam* jurisdiction over her.

On January 6, 1989, at approximately 9:30 a.m., plaintiff and codefendant were involved in a car accident with each other on River Oak Drive in Calumet City, Illinois. Plaintiff allegedly suffered injuries from that accident. A police officer arrived on the scene and prepared a report. Codefendant claimed his address was 4 Carroll Street, apartment 2 in Hammond, Indiana, which was defendant's address.

Codefendant stated in his deposition that on January 5, 1989, he was living with his sister on Hohman Street in Hammond, Indiana. On the evening of January 5, codefendant and his daughter walked to

defendant's apartment. Codefendant, his daughter, defendant and her son watched movies at the Carroll Street apartment. After defendant, her son and codefendant's daughter fell asleep, codefendant went into defendant's bedroom and took all the keys from her purse, including her keys to the apartment and to her 1978 Thunderbird. During his deposition, codefendant testified that he did not have permission to drive defendant's car, but took it anyway. Codefendant further admitted that if he had asked for permission, she would have denied it. Defendant had not allowed him to use her car since his regular license had been taken by the State of Indiana and replaced with a work permit license. Codefendant intended to take the car and return with it before defendant awoke. He testified that he had never taken defendant's car without her prior express permission and had never driven her car since having a work permit license. The approximately 10 to 15 times he had used defendant's car in the past, he had had a valid driver's license and her express permission. Codefendant also explained that after the accident, he gave defendant's address as his own so that the police officer would not think that he stole the car.

Defendant testified during her deposition that when she awoke on January 6, she found that codefendant's daughter was still asleep, but that codefendant was not there. She went outside and discovered that her car was missing. Defendant called the police and made a report that the car was stolen. She could not remember if she had learned of codefendant's accident prior to reporting the car stolen. She did remember that the police did not arrive at her apartment until that afternoon and that by that time she had learned of the accident. The police incident report reflects that she informed police that codefendant had taken her car sometime between 10 p.m. on January 5 and 8 a.m. on January 6 without her permission.

On appeal, plaintiff argues that the circuit court improperly granted summary judgment in favor of defendant because there are genuine issues of fact. A motion for summary judgment should only be granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In determining whether a triable issue exists, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Discovery depositions must be taken as true if left uncontroverted by affidavit or counteraffidavit. *In re Estate of Myers* (1983), 120 Ill. App. 3d 726, 458 N.E.2d 1102.

●■■ A person may be liable for negligent entrustment of an automobile if that person entrusts an automobile to one whose incompetency, inexperience or recklessness is known or should have been known by the owner or entrustor of the automobile and an injury results from that entrustment. (*Giers v. Anten* (1978), 68 Ill. App. 3d 535, 386 N.E.2d 82.) It is uncontroverted that defendant did not give codefendant express permission to use her car. Plaintiff, however, theorizes that defendant negligently entrusted her car to codefendant through implied permission. Implied permission involves an inference or circumstances arising from a course of conduct or relationship between the parties in which there is a mutual acquiescence or lack of objection under circumstances signifying permission. *Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.

Plaintiff asserts that several questions of material fact exist which relate to the issue of implied permission. For example, plaintiff argues that defendant acquiesced in codefendant's use of the car because she did not report that the car was stolen until after she learned that codefendant had an accident while driving it and, additionally, because she never pressed charges against him for allegedly stealing it. Plaintiff also argues that questions of material fact exist as to whether codefendant knew where the keys to the car were kept and whether he was residing with defendant at the time of the accident. Even when we view the above inferences most liberally in favor of plaintiff, they do not amount to evidence of mutual acquiescence or lack of objection as required for there to be implied permission.

In *Kosrow v. Acker* (1989), 188 Ill. App. 3d 778, 544 N.E.2d 804, the appellate court held that facts similar to those above, such as leaving the keys on a dresser in a bedroom where the unauthorized driver sometimes sleeps, living with the unauthorized driver and failing to report the car stolen until after learning of the accident, did not establish implied permission. (*Kosrow*, 188 Ill. App. 3d at 784-85, 544 N.E.2d at 808.) The court reasoned that there was no evidence that there was a *regular* practice of allowing the unauthorized driver to use the car. The *Kosrow* court further found that there was overwhelming evidence to the contrary of implied permission, such as the unauthorized driver's testimony that he knew the defendant did not want him driving his car and defendant's testimony that he did not allow the unauthorized driver to use his car. *Kosrow*, 188 Ill. App. 3d at 785, 544 N.E.2d at 808.

■■ In the case at bar, the uncontradicted evidence is that prior to having his regular Indiana driver's license suspended and being issued a work permit license, codefendant was always required to get defendant's express permission to use her car. At the time of the accident,

when he only had the work permit license, codefendant was never allowed to drive the car under any circumstances. In fact, when he wanted to go somewhere, defendant would drive him. Thus, the relevant regular practice between defendant and codefendant regarding the use of the car was that he was not allowed to drive it under any circumstance. Considering the holding in *Kosrow* and the uncontradicted testimony of defendant and codefendant, there are no questions of material fact which would bear on the outcome of plaintiff's count against defendant for negligent entrustment by implied permission. We, therefore, affirm the circuit court's order of summary judgment in favor of defendant.

In her cross-appeal, defendant argues that she was not subject to *in personam* jurisdiction in Illinois under the long arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(2)) nor did such jurisdiction meet the Federal due process requirements (U.S. Const., amends. V, XIV). Notwithstanding our holding on the previous issue, we find it was error for the circuit court to fail to quash service.

■ Where personal jurisdiction over a nonresident is contested, the burden of establishing it rests on the plaintiff to establish jurisdiction by a preponderance of the evidence. (*Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989; *People ex rel. Hartigan v. Kennedy* (1991), 215 Ill. App. 3d 880, 576 N.E.2d 107.) All undenied, well-pled allegations in his complaint must be accepted as true. (*Mandalay Associates Ltd. Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 491 N.E.2d 39.) Facts contained in an uncontested affidavit denying jurisdiction, however, must also be accepted as true. *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.* (1985), 136 Ill. App. 3d 1084, 483 N.E.2d 1291.

■ The following three criteria must be considered to determine whether the exercise of personal jurisdiction over a nonresident defendant under the long arm statute satisfies due process: (1) whether the nonresident defendant had "minimum contacts" with the forum State such that he had "fair warning" that he may be required to defend himself there; (2) whether the action arose out of or relates to defendant's contacts with the forum; and (3) whether it is reasonable to require the defendant to litigate in the forum State. (*Ores v. Kennedy* (1991), 218 Ill. App. 3d 866, 578 N.E.2d 1139; U.S. Const., amends. V, XIV.) Thus, there must be some act by which defendant purposefully availed herself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws. *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.

■ Jurisdiction under the long arm statute is limited by the due process clause of the United States which requires defendants to have minimum contacts with the forum state. (U.S. Const., amends. V, XIV; *Milligan v. Soo Line R.R. Co.* (N.D. Ill. 1991), 775 F. Supp. 277.) We find that defendant's alleged negligence was not sufficient minimum contact with Illinois to permit personal jurisdiction in compliance with due process. In *Kinney v. Anchorlock Corp.* (N.D. Ill. 1990), 736 F. Supp. 818, the court held that a truck seat manufacturer's alleged commission of a tort in Illinois was not sufficient minimum contact to satisfy due process requirements even if it was foreseeable that a driver would take the truck to Illinois, because no other evidence indicated that he purposefully availed himself to the privileges of Illinois law.

In the case at bar, the cause of action stated in plaintiff's complaint was negligent entrustment. In order to attempt to prevail, plaintiff was forced to rely on the theory of implied permission because there was uncontroverted testimony and a sworn statement that codefendant did not have express permission to use defendant's car. Since the alleged permission was "implied," defendant could not have foreseen that codefendant would drive to Illinois and injure someone. Moreover, as in *Kinney*, there is no other evidence that she purposefully availed herself of the privileges of Illinois law. The uncontradicted evidence is that defendant had no contacts with Illinois in any form or manner. Defendant had lived in Indiana since 1970, had worked there since 1980, her car was registered in Indiana, bore Indiana license plates and was kept at her residence in Indiana. We find that the assertion of jurisdiction does not comply with Federal due process requirements. (See *Hrubec v. National R.R. Passenger Corp.* (N.D. Ill. 1991), 778 F. Supp. 1431.) It is unnecessary to determine whether the requirements of Illinois' long arm statute have been met because the Federal due process requirements bar exercise of *in personam* jurisdiction in Illinois over defendant. (See *Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.* (1991), 213 Ill. App. 3d 675, 572 N.E.2d 353.) Accordingly, we hold that the circuit court erred in denying defendant's motion to quash service for lack of personal jurisdiction because defendant lacks the requisite minimum contacts with Illinois.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County.

Affirmed in part and reversed in part.

MANNING, P.J., and O'CONNOR, J., concur.