IDEAL INSURANCE AGENCY, INC., Plaintiff-Appellant, v. SHIPYARD MARINE, INC., Defendant-Appellee.

Second District    No. 2—90—1008

Opinion filed May 10, 1991.

Daniel L. Giudice and Robert Earl Dooley, both of Dooley, Chessick & Giudice, of Schaumburg, for appellant.

Donald B. Garvey and C. Kent Frederick, both of Bishop, Rossi, Garvey & Scarlatti, of Oak Brook, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Ideal Insurance Company, appeals from an order of the circuit court of Du Page County which quashed the service of summons on defendant, Shipyard Marine, Inc. Plaintiff contends that the circuit court erred in determining that there was no *in personam* jurisdiction over defendant, a Wisconsin corporation. The issue on appeal is whether defendant transacted business in this State so as to come within the reach of the State's "long-arm" jurisdiction.

In 1989, the president of plaintiff, Gerald Grupe, was interested in buying a 43-foot Wellcraft Portofino boat to conduct a charter boating business. He was considering buying the boat from Rodi Yachts in Chicago (Chicago company), but had not actually seen the boat. Grupe learned that a Portofino boat was on display at a boat show in Racine,

Wisconsin. On August 16, 1989, Grupe travelled to Racine and found the boat. While touring the boat, he was approached by Craig Braun, the president of defendant, who owned the boat. Grupe stated in his affidavit that Braun asked him if he was interested in the boat and that Grupe told him he was planning to purchase such a boat from the Chicago company. Grupe stated that Braun then said his company serviced and delivered boats in Chicago and that plaintiff should consider buying the boat from defendant.

Grupe's affidavit further indicated that Braun made the next telephone call in which Braun stated that defendant would match any bid which the Chicago company made and that defendant could deliver the boat in October or November because it had already had a slot with the manufacturer. It appears from the affidavits that both parties made telephone calls between defendant's Green Bay, Wisconsin, office and plaintiff's Lombard, Illinois, office. The parties discussed the cost of adding additional equipment and options to the price of the basic Portofino boat. Plaintiff decided to accept delivery of the boat at the manufacturer's docks in Florida, where plaintiff could operate charters during the winter.

On September 6, 1989, plaintiff received a final quotation and order form via facsimile machine from the Chicago company. Plaintiff telephoned defendant with the price, which defendant said it would match plus "throw in" a $5,000 autopilot device at no charge and make delivery by October 14, 1989. Defendant claimed that date was sooner than the other company could deliver the boat because defendant already had a hull arranged with the manufacturer and the Chicago company was allegedly "on probation" with the manufacturer. Defendant sent a contract by facsimile machine to plaintiff with instructions to sign the facsimile page and re-fax the page back to defendant. Defendant also instructed plaintiff to execute a formal copy of the contract in addition to the facsimile and send it back along with a $10,000 check as a deposit. On September 11, 1989, Grupe telephoned defendant, who told him that Braun would also transport the boat by trailer from Florida to Chicago in the summer, for a fee of $5,200. Plaintiff accepted defendant's bid, signed the contract in its office in Lombard, Illinois, sent a facsimile copy of the signed page to defendant, and mailed the executed copy and a $10,000 check to defendant in Wisconsin. The record does not reflect when Braun, as president of defendant, signed the contract.

The contract listed the basic price of the boat as $221,700, plus 33 specified options which brought the total to $276,500, less a discount of $53,758, and plus Florida sales tax of $11,137, for a balance of

$233,879. No place of delivery is specified in the contract. The back side of the contract contained the following paragraph:

"10. CONTROLLING LAW. The parties acknowledge that the transaction which is the subject of this contract bears a reasonable relation to the State of Wisconsin and that the laws of the State of Wisconsin shall govern their rights and duties. The parties specifically intend that the provisions of the Uniform Commercial Code-Sales, as enacted in the State of Wisconsin. [*sic*]"

When plaintiff's bank failed to approve financing, plaintiff cancelled the order and requested defendant to return the deposit. Defendant refused, and plaintiff filed suit in the circuit court of Du Page County, Illinois. Defendant filed a special and limited appearance (see Ill. Rev. Stat. 1989, ch. 110, par. 2—301) and moved to quash the service of summons on the ground that jurisdiction was improper under the "long-arm" statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—209). The circuit court agreed and granted defendant's motion. Plaintiff now appeals.

The issue before this court is whether the State of Illinois can properly exercise jurisdiction over the nonresident defendant. This issue involves three similar but distinct analyses which can easily be confused and combined. The first is whether a nonresident defendant was "doing business" in this State so as to maintain a presence subjecting it to *in personam* jurisdiction for all matters. The second analysis is, alternatively, where a defendant is not doing business in this State generally, whether it has sufficiently transacted a business act in this State to come within the "long-arm" jurisdiction. Third, whether the defendant has created certain minimum contacts with this State such that due process of law would not be violated in compelling it to litigate the controversy in this State.

■ A court need not make each analysis in every case. For example, it is unnecessary to determine whether the requirements of the long-arm statute have been met when the due process clause bars any exercise of jurisdiction over a defendant. (*Wiles v. Morita Iron Works Co.* (1988), 125 Ill. 2d 144, 149; *Chalek v. Klein* (1990), 193 Ill. App. 3d 767, 770-72 (nonresident passive buyers who purchase by mail order do not have minimum contacts with Illinois, disagreeing with the rule in *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 154-55).) Conversely, if the long-arm requirements are not met, there is no need to determine whether jurisdiction is constitutionally permissible under the due process clause.

*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 311; *Konicki v. Wirta* (1988), 169 Ill. App. 3d 21, 25-26.

■ First, jurisdiction in this case is grounded solely on the long-arm power of this State, not on the basis that defendant was "doing business" in this State such that it maintained a presence here. We note here that the "doing business" form of jurisdiction has recently been codified as section 2—209(b)(4) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(b)(4)). While there were vague references that defendant admitted to delivering and servicing boats in Illinois, defendant denied that it had an office or a sales agent in this State. Plaintiff's allegations were insufficient to establish that defendant was continuously and systematically doing business in this State so as to be present for service of process in the same manner as other resident corporations. See *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 557-58, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857; *Chandler Leasing Co. v. Trus Joist Corp.* (1980), 90 Ill. App. 3d 875, 878.

■ Next, we analyze whether Illinois has jurisdiction over defendant under the long-arm statute. Under the long-arm statute, a nonresident submits to the jurisdiction of this State upon "(1) [t]he transaction of any business within this State; *** [or] (7) [t]he making or performance of any contract or promise substantially connected with this State." (Ill. Rev. Stat. 1989, ch. 110, pars. 2—209(a)(1), (a)(7).) Only the cause of action arising from that act may be asserted against a defendant based on long-arm jurisdiction. (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(f).) Thus, an Illinois court will accept jurisdiction only where the defendant transacted business in this State; the cause of action arose from the transaction; and the exercise of jurisdiction is consistent with due process. *Mandalay Associates Limited Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 894.

The scope of the long-arm statute may not be coextensive with the jurisdictional aspect of the Federal due process considerations in any particular situation. The long-arm statute has a definite meaning and scope which does not fluctuate with every new pronouncement of the limits of Federal due process, which merely delineates the outer limits beyond which a State may not go to acquire jurisdiction over nonresidents. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436.) The Illinois long-arm statute may restrict the power that the courts of this State have to bring nonresidents before them to a greater extent than do the Federal due process clause and the "minimum contacts" standard which the supreme court has developed over the years. *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 271-72.

■ On September 7, 1989, the day defendant sent its bid, before the parties made several telephone calls and before plaintiff signed the contract, a new version of the long-arm statute became effective. It states:

"(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(c).)

The Federal courts, in their exercise of diversity jurisdiction, have interpreted the new section 2—209(c) to rule that the reach of the long-arm statute is coextensive with the limits of Federal due process "minimum contacts" requirements. (*FMC Corp. v. Varonos* (7th Cir. 1990), 892 F.2d 1308, 1310-11 n.5; *Bankers Leasing Association, Inc. v. Tompkins, McGuire & Wachenfeld* (N.D. Ill. 1990), 734 F. Supp. 309, 310-11.) However, this basis of *in personam* jurisdiction was not raised in the trial court or in the parties' briefs and is therefore waived. (See *Konicki*, 169 Ill. App. 3d at 25.) Similarly, the applicability of section 2—209(a)(7), which was also effective September 7, 1989, and which provides that the making of a contract in this State is a basis of jurisdiction, was not raised before the trial court. Plaintiff has listed subsection 2—209(a)(7) in its brief but does not argue it as a separate basis of jurisdiction. Thus, the applicability of that section is also waived. *Brainerd v. Balish* (1987), 164 Ill. App. 3d 836, 839 n.1.

■ Our primary analysis, then, is to determine whether defendant is subject to Illinois' long-arm jurisdiction by transacting business in this State. To constitute the "transaction of any business" within this State, a defendant must voluntarily seek the benefits and protections of the laws of this State. (*Konicki*, 169 Ill. App. 3d at 26.) Section 2—209(a)(1) requires, essentially, that a plaintiff's claim lie in the wake of the commercial activities by which the defendant allegedly submitted to the jurisdiction of Illinois courts. (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 833.) Only the acts of the defendant are considered when determining whether business was transacted in Illinois. *Konicki*, 169 Ill. App. 3d at 26.

The determination of whether a defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors, including who initiated the transaction, where the contract was entered into, and where the performance of the contract was to take place. (*Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 280-81.) While none of these factors is by itself

controlling, each of them is significant; however, Illinois cases provide little guidance in balancing these factors. (See *Leonardo's, Inc. v. Greathall, Ltd.* (N.D. Ill. 1989), 714 F. Supp. 949, 953 (comparing *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, with *AAAA Creative, Inc. v. Sovereign Holidays, Ltd.* (1979), 76 Ill. App. 3d 514).) In addition, some courts have suggested that those cases decided before *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, in which Illinois adopted the two-part analysis of applying both the statutory requirement and the constitutional requirement, are suspect, because before 1981 some courts applied only the constitutional requirement. (*Leonardo's*, 714 F. Supp. at 953; *Rose v. Franchetti* (N.D. Ill. 1989), 713 F. Supp. 1203, 1207.) However, even after 1981, some courts have used a combined "minimum contacts" constitutional analysis and business transaction analysis and relied on pre-*Green* precedent. See, *e.g., Capital Associates Development Corp. v. James E. Roberts-Ohbayashi Corp.* (1985), 138 Ill. App. 3d 1031, 1037-38.

In discussing the *Gordon* factors, plaintiff contends that the affidavits show it was defendant who initiated the transaction. It may be true that Braun did strike up the conversation with plaintiff's president, but any significance of that fact is tempered by the fact that this initial conversation occurred in Wisconsin and plaintiff was "touring" defendant's boat at the time. Plaintiff went to Wisconsin because he intended to purchase a boat like the one defendant was exhibiting for sale in Wisconsin. The initiation of a transaction is an important factor in determining whether a defendant transacted business in this State (*Woodfield Ford*, 77 Ill. App. 3d at 349), and in this case, the contact was initiated in Wisconsin.

Plaintiff also argues that the contract was entered into in Illinois. "The long-established rule in Illinois governing the making of contracts is that the place where the last act necessary to give validity to the contract is done is the place where the contract is made." (*Youngstown Sheet & Tube Co. v. Industrial Comm'n* (1980), 79 Ill. 2d 425, 433; *Gordon*, 148 Ill. App. 3d at 282.) Plaintiff executed the contract in Illinois and mailed the deposit check from Illinois. Defendant contends that the contract was formed in Wisconsin because it required the reproduction of the contract on its facsimile machine in Wisconsin and the receipt of the deposit in Wisconsin. Defendant further contends that it was not willing to commit itself to order an expensive boat from the manufacturer based on a promise that a check had been mailed. However, the record is unclear as to where the contract was executed. Assuming *arguendo* that plaintiff's version is cor-

rect, the mere execution of a contract within Illinois is not by itself a sufficient transaction of business to fit within the long-arm statute. *Kotlisky v. Kotlisky* (1990), 195 Ill. App. 3d 725, 737, citing *Met-L-Wood Corp. v. Lifetime Pools, Inc.* (N.D. Ill. 1979), 475 F. Supp. 149, 151 ("Formalities of contract execution are not determinative for purposes of jurisdiction").

The third *Gordon* factor is where the contract would be performed. Plaintiff points to defendant's agreement to haul the boat overland to Illinois in the summer; the servicing of the boat in Illinois; plaintiff's entire performance, which was borrowing and drawing the funds from an Illinois bank; and defendant's claim to have worked in Illinois in the past as an inducement for plaintiff to select its bid. In the trial court, defendant contended that performance was to be in Wisconsin, based on section 2—308 of the Uniform Commercial Code-Sales (Commercial Code) (Ill. Rev. Stat. 1989, ch. 26, par. 2—308; Wis. Stat. §402.308 (1964)), which states that the place of delivery of goods is the seller's place of business when the contract is silent. However, section 2—308 also states that, when the goods are identified (the contract listed the serial number of the hull) and are known to be in some other place, that location is the place of delivery. (Ill. Rev. Stat. 1989, ch. 26, par. 2—308(b); Wis. Stat. §402.308(2) (1964).) This part of the Commercial Code supports defendant's alternate argument that the place of performance, delivery of the boat at the manufacturer's dock, was to be Florida, which is also supported by the parties' affidavits and the contract, which specified the payment of Florida sales tax.

We also believe performance was to be in Florida. The other agreements for services appeared to be separate from this transaction for the purchase of the boat. While plaintiff's facts are relevant to the question of whether defendant had "minimum contacts" with Illinois under the due process clause, they are not sufficient to show that the performance of this contract would be in Illinois. Moreover, exchanges of telephone calls and correspondence are not enough to support jurisdiction. (*Konicki*, 169 Ill. App. 3d at 27; *Gordon*, 148 Ill. App. 3d at 281.) Under this contract, nothing mandated payment in Illinois or from Illinois, and *plaintiff's* plan to use funds in an Illinois bank was not sufficient to obtain jurisdiction over defendant or to show defendant sought the benefits of Illinois law. See *Konicki*, 169 Ill. App. 3d at 27; *Blanco Oso International Trading Co. v. Southern Scrap Material Co., Ltd.* (N.D. Ill. 1990), 735 F. Supp. 294, 296.

■ On the balance, the relevant factors weigh against finding jurisdiction over defendant. There is little to show that defendant in-

tended to avail itself of Illinois law other than the fact that it made telephone calls here, sent the contract here to be signed and stated it would perform services here in the future for separate fees. However, the initial contact and negotiation were in Wisconsin and performance was substantially to be in another State (Florida). Thus, we hold that defendant did not come within the reach of the long-arm provision of section 2—209(a)(1).

Given that we have determined that the requirements of the long-arm statute were not met in this case, we have no reason to consider whether jurisdiction was constitutionally permissible under the due process clause. See *R.W. Sawant*, 111 Ill. 2d at 311; *Konicki*, 169 Ill. App. 3d at 25-26.

For these reasons, the order of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and McLAREN, JJ., concur.