1999-NMCA-089

984 P.2d 803

**CABA LIMITED LIABILITY COMPANY, Plaintiff–Appellant,**

v.

**MUSTANG SOFTWARE, INC., Defendant–Appellee.**

No. 18842.

Court of Appeals of New Mexico.

May 25, 1999.

Jeffrey A. Dahl, Clayton E. Crowley, Lamb, Metzgar, Lines, & Dahl, P.A., Albuquerque, for Appellant.

Richard D. Yeomans, Guebert & Yeomans, P.C., Albuquerque, for Appellee.

## OPINION

APODACA, Judge.

{1} CABA Limited Liability Company (Plaintiff) appeals from the trial court's order dismissing its complaint against Mustang Software (Defendant) for lack of personal jurisdiction. This appeal raises a question concerning the in personam jurisdiction of our state courts over an out-of-state company that arranged, essentially by telephone, fax and mail correspondence, to retain software program services from a New Mexico corporation. We hold that, because Defendant did not transact business in New Mexico within the meaning of our long-arm statute, the trial

court properly dismissed the complaint for lack of personal jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} The facts are undisputed. Plaintiff is a New Mexico corporation with its principal place of business in Albuquerque. Defendant is a California corporation with its principal place of business in Bakersfield, California. Plaintiff and Defendant are both engaged in the business of software development. Defendant does not maintain offices in New Mexico, nor has it ever been licensed to do business in New Mexico. Richard Heming, who participated in the contract negotiations in question, has never been in New Mexico. Mr. Heming is the Vice President and Chief Operations Officer of Defendant and is also a member of its board of directors. He has never owned or leased property, applied for a loan, or maintained an office, telephone listing or bank account in New Mexico.

{3} Defendant is a publicly-traded corporation, doing business both nationally and internationally. It sells its products through large software outlets, including a local New Mexico store and through value-added resellers in New Mexico.

{4} Two New Mexico software engineers, Simon Clement and Derek Backus, incorporated Plaintiff for the purpose of entering into a contract with Defendant. Before Plaintiff's dealings with Defendant, Simon Clement was the principal of a company named ProDesign, Inc. (ProDesign), with offices in Albuquerque. Clement and another member of ProDesign, Derek Backus, traveled from Albuquerque to Bakersfield to attend a conference on one of Defendant's products—Wildcat 5.0 Platform (the Wildcat). During the conference, Clement and Backus met Brett Martin, the Vice President of Sales and Marketing for Defendant. Martin indicated that he was interested in having Clement and Backus develop applications for the Wildcat. Specifically, he was interested in having Clement and Backus reconfigure ProDesign's "shopping mall" software to operate with the Wildcat. A "shopping mall" apparently is software that allows customers to buy products on-line.

{5} Martin later approached Clement and Backus about converting their Zephyr shopping mall to the Wildcat under an original equipment manufacturer (OEM) agreement. The three reached a consensus that they would enter into an agreement to have Clement and Backus convert their Zephyr shopping mall to the Wildcat under an OEM agreement, on the condition that Clement and Backus would be paid an advance on royalties in the amount of $30,000, and $30,-000 on completion of the project.

{6} After returning to Albuquerque, Clement and Backus prepared corporate documents to incorporate Plaintiff and registered the new company with the appropriate state agency in anticipation of entering into the contract with Defendant. At this point, Heming took over the contract negotiations for Defendant. Heming telephoned Clement in Albuquerque to discuss the terms and conditions of an agreement to convert the Zephyr shopping mall to operate on the Wildcat. Heming indicated that he wanted to make some changes to the deal proposed by Martin in Bakersfield. After several days of negotiations by telephone, including the exchange of proposed agreements by fax, Clement and Heming arrived at the conditions contained in a document entitled "Letter of Intent." Heming mailed the Letter of Intent to Clement in New Mexico. The letter provided as follows:

> This document outlines the basic contract points for licensing technology generally described as a Shopping Mall WC5 client, based on the Zephyr product. The product will be licensed for distribution as an OEM product tentatively called wcMall. The basics of the agreement include the following points:
> - Mustang Software, Inc. will distribute the product as an OEM version, with responsibility for all costs of production, marketing and support.
> - Payment will be structured at $130 per end-user copy.
> - ProDesign will provide code maintenance and updates on a timely basis for a period of 18 months.

- Advance on royalties of $30,000 paid at Letter of Intent with additional advance on royalties and 18 month royalty guarantee based on delivery: . . . .
- An additional advance on royalties of $10,000 will be paid on January 1, 1997 if HTML functionality is added to the product by that time.

Please sign and return this original along with the name and address of the entity that will enter into the contract.

Clement endorsed the two copies and returned one copy by mail to Heming in California. After receiving the endorsed agreement, Heming issued a check for payment of $30,000 to Plaintiff. The payment was received and deposited by Plaintiff in its New Mexico bank account.

{7} Later, Heming received a letter from an attorney for DataSafe Publications, Inc., indicating that Clement's software product was a "knock off" of DataSafe's software. DataSafe, located in New Mexico, is a licensed reseller for Defendant and sells its products both locally and nationally. The letter informed Heming of pending litigation between Clement and DataSafe and threatened legal action against Defendant for knowingly participating in copyright infringement. As a result of this letter, Heming wrote to Clement, explaining that Defendant was unable to proceed with an advance on royalties and that he was canceling the check previously issued. Clement was later informed that Heming placed a stop-payment on the check and that the bank refused to honor it. Plaintiff acknowledges that all contacts with Heming concerning the agreement, as set forth in the Letter of Intent, were completed by telephone, fax and mail between Plaintiff in New Mexico and Heming in California.

{8} Plaintiff later filed a complaint in New Mexico against Defendant for breach of contract and for damages, alleging that Defendant failed to comply with the provisions of the Letter of Intent even after Plaintiff exhibited to Defendant that its software technology was substantially different from that of DataSafe's "Omni–Mall" product. Defendant moved to dismiss the complaint for lack of personal jurisdiction. Both parties filed affidavits in support of their positions on the issue of personal jurisdiction. Following a hearing, the trial court entered an order dismissing the complaint for lack of personal jurisdiction.

## II. DISCUSSION

### A. Standard of Review

■■■ {9} In reviewing an appeal from an order granting or denying a motion to dismiss for lack of personal jurisdiction, the determination of whether personal jurisdiction exists is a question of law, which an appellate court reviews de novo when the relevant facts are undisputed. If the [trial] court's ruling on the motion to dismiss is based upon pleadings and affidavits, the standard of review largely mirrors the standard involving appeals from the grant or denial of motions for summary judgment. In the instant case the underlying material facts are not disputed. *Harrell v. Hayes*, 1998–NMCA–122, ¶ 11, 125 N.M. 814, 965 P.2d 933 (citations omitted). We thus review de novo the trial court's application of the law to the undisputed facts of this case.

### B. Application of New Mexico's Long–Arm Statute

■■ {10} We examine the facts of this case in light of New Mexico's long-arm statute and constitutional due process principles to determine if our courts have personal jurisdiction over Defendant. New Mexico's long-arm statute, NMSA 1978, § 38–1–16(A) (1971) provides in relevant part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state . . . .

"We have repeatedly equated the 'transaction of business'—insofar as the acquisition of long-arm jurisdiction under our statute is concerned—with the due process standard of

'minimum contacts' ...." *Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 534, 543 P.2d 825, 827 (1975).

■ {11} New Mexico case law has consolidated the statutory and constitutional requirements of our long-arm statute into a three-part test, which must be met before our state courts may exercise personal jurisdiction over a nonresident defendant.

In order to ascertain whether personal jurisdiction exists over an out-of-state defendant, our Supreme Court has approved a three-part test, inquiring whether (1) the acts of the defendant are specifically set forth in this state's long-arm statute, (2) the plaintiff's cause of action arises out of and concerns such alleged acts, and (3) the defendant's acts establish minimum contacts to satisfy constitutional due process concerns.

*Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738, 742, 918 P.2d 17, 21 (Ct.App.1996).

### 1. Transaction of Business Within New Mexico

■ {12} The first step in our analysis is to determine whether Defendant transacted business within New Mexico. The determination of whether a party transacted business in the state, within the meaning of the long-arm statute, "must be determined by the facts in each case." *Telephonic, Inc.*, 88 N.M. at 534, 543 P.2d at 827. Plaintiff urges us to apply the factors enumerated in *Pelton v. Methodist Hosp.*, 989 F.Supp. 1392 (D.N.M.1997), and used by Illinois courts, for determining whether certain conduct constitutes the transaction of business under New Mexico's long-arm statute. Those factors include "(1) who initiated the transaction; (2) where the transaction was entered into; and (3) where the performance was to take place." *Id.* at 1394. These factors are generally implicit in New Mexico's case law on the subject. *See Harrell v. Hayes*, 1998–NMCA–122, ¶¶ 19–22, 125 N.M. 814, 965 P.2d 933 (considering who initiated the transaction, where the transaction was entered into, and where performance occurred); *Campos Enters., Inc. v. Edwin K. Williams and Co.*, 1998–NMCA–131, ¶¶ 8–13, 125 N.M. 691, 964

P.2d 855 (considering where performance occurred); *Tercero v. Roman Catholic Diocese*, 1999–NMCA–052, ¶¶ 16–18, —— N.M. ——, 980 P.2d 77 (considering where tortious acts occurred). We believe that these factors are helpful in determining whether Defendant transacted business in New Mexico. We find an Illinois court's analysis on this issue persuasive. *See Pelton*, 989 F.Supp. at 1393 (stating that because "the New Mexico long arm statute was taken from Illinois, ... Illinois law is persuasive on its interpretation.").

■ {13} Concerning the first factor, Plaintiff argues it is significant that Defendant initiated the transaction of business by approaching Plaintiff's representatives, Clement and Backus, in California and asking them to convert their Zephyr shopping mall to the Wildcat. The parties do not dispute that Defendant's agent approached Plaintiff's representatives in California and initiated conversations that later led to the agreement outlined in the Letter of Intent. This initial conversation took place in California, however, where Plaintiff's representatives were attending a conference on Defendant's platform. The record does not indicate that Defendant did anything in this state to solicit or initiate any business transaction with Plaintiff. *See Ideal Ins. Agency v. Shipyard Marine, Inc.*, 213 Ill. App.3d 675, 157 Ill.Dec. 284, 572 N.E.2d 353, 358 (1991) ("The initiation of a transaction is an important factor in determining whether a defendant transacted business in this State."). Plaintiff presented no facts demonstrating that Defendant, either directly or through an agent, voluntarily solicited, advertised, or otherwise initiated the business transaction within this state. That is the crucial difference between the facts of this case and those cases relied on by Plaintiff. *Cf. State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 246, 784 P.2d 986, 989 (1989) (holding that voluntarily initiating contacts with plaintiff's agent by purchasing automobile insurance in New Mexico, nonresident defendant manifested a "purposeful intent to transact business in this state"); *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 471, 493 P.2d 954, 956 (1972) (concluding that defendant's actions of hiring plaintiff to solicit orders, make de-

livery to purchasers, advertise products and paying plaintiff's wages in New Mexico for these services constituted a transaction of business in New Mexico); *Moore v. Graves,* 99 N.M. 129, 654 P.2d 582 (Ct.App.1982) (determining that nonresident defendant who solicited business by advertising in a trade magazine availed himself of the privilege of conducting business in New Mexico). Consequently, Plaintiff has failed to satisfy the first *Pelton* factor.

{14} The second *Pelton* factor is "where the transaction was entered into." Plaintiff contends that the transaction was entered into in New Mexico upon Plaintiff's signing the Letter of Intent. Plaintiff bases that contention on its argument that a nonresident engages in business within the state when he or she chooses to enter into a contract under which a New Mexico resident will perform services in New Mexico that benefit the nonresident. Plaintiff cites *Russey v. Rankin,* 837 F.Supp. 1103 (D.N.M. 1993), in support of this contention, arguing that it is irrelevant that the communications surrounding the contract negotiations in this case were by telephone and correspondence. The basis for the court's exercise of jurisdiction over the nonresident debt collection agency in *Russey,* however, was that the resident's cause of action for unfair debt collection practices was based on the agency's act of sending one or more collection letters to a New Mexico resident. *Id.* at 1105. *Russey* recognized that "[t]he demand letters allegedly sent by the California defendants to the plaintiff in [New Mexico] constitute[d] the sole basis for imposing liability in this action." *Id.* at 1104. In that case, the defendant's initiation of communications by mail in the forum state constituted the heart of the agency's business and was the basis for the claim of unfair debt collection practices. *See id.* at 1105. The federal court thus held that, "[b]ecause [the agency's] written correspondence is the nucleus of the alleged wrongful conduct rather than just·an ancillary contact with the forum, it was reasonable to have anticipated being hailed [sic] into [a] New Mexico court on claims based upon the letter." *Id.*

{15} Unlike *Russey,* here, Heming's telephone calls to Clement in New Mexico did not constitute the heart of Defendant's business and were not the basis for Plaintiff's breach of contract claim. Rather, the wrongful conduct alleged in Plaintiff's breach of contract claim was Defendant's revocation of the agreement to provide software development services.

{16} Additionally, case law supports our holding that a nonresident does not engage in business in New Mexico when it enters into contract with a New Mexico resident by mail, fax, and telephone without ever entering the state. *See Ideal Ins. Agency,* 157 Ill.Dec. 284, 572 N.E.2d at 358 ("[T]he mere execution of a contract within Illinois is not by itself a sufficient transaction of business to fit within the long-arm statute."); *Customwood Mfg., Inc. v. Downey Constr. Co.,* 102 N.M. 56, 57–58, 691 P.2d 57, 58–59 (1984) (nonresident defendant did not transact business in New Mexico within the meaning of the long-arm statute by mailing purchase order to resident).

{17} The final factor under *Pelton* is "where the performance was to take place." Plaintiff asserts that the contract was to be performed in New Mexico. We disagree. Plaintiff's argument focuses on its own performance under the contract; however, this is not the focus of the inquiry placed by courts in addressing this factor. In *Maurice Sternberg, Inc. v. James, Jr.,* 577 F.Supp. 882 (N.D.Ill.1984), the plaintiff was attempting· to assert jurisdiction in Illinois over a nonresident defendant by virtue of the fact that the defendant's contract was with an Illinois corporation whose portion of the contract was to be performed in Illinois. The court stated:

> [W]hile any contract involving an Illinois party inevitably involves contact with the state, that fact alone is insufficient for jurisdictional purposes. A distinction must be drawn 'between the transaction of business in Illinois and the transaction of business with an Illinois corporation.' The fact that the Illinois plaintiff's part of the contract was to be performed in Illinois is not transacting business for jurisdictional purposes. The focus of the inquiry must be

on the acts of the defendant to determine whether there has been a transaction of business. In the present case, therefore, the fact that plaintiff shipped the painting in question and performed its part of the bargain in Illinois is irrelevant for jurisdictional purposes. Defendant performed its part of the bargain in Nashville. These facts will not support long-arm jurisdiction in Illinois.

*Id.* at 885–86 (citations omitted).

{18} Like the defendant in *Pelton*, Defendant performed its part of the bargain in California, from the initial proposal to Plaintiff's representatives in California to the negotiations with Plaintiff by telephone and the mailing of the Letter of Intent and royalty check. *See Afirm, Inc.,* 624 F.Supp. at 976 (recognizing that "more recent cases say that the plaintiff's place of performance is irrelevant for jurisdictional purposes; the focus should be on the acts of the defendant"). As we noted previously, Plaintiff contends that the agreement was entered into in New Mexico when Plaintiff endorsed the Letter of Intent, and that the performance of the contract was going to take place in New Mexico. *See Cherry Communications, Inc. v. Coastal Tel. Co.,* 906 F.Supp. 452, 455 (N.D.Ill.1995) (recognizing that "it is well established that the place of plaintiff's performance has no influence on jurisdiction, since it is the defendant's actions within the forum that determine whether defendant was transacting business in" the forum state). The fact that Plaintiff endorsed the Letter of Intent in New Mexico, therefore, is irrelevant. *See Visarraga,* 104 N.M. at 147, 717 P.2d at 600 ("The unilateral activity of those who claim a relationship with a nonresident defendant does not alone satisfy the requirement of contact with the forum state."); *Sanchez,* 115 N.M. at 663, 857 P.2d at 774 (stating that the acts of the defendant and not the acts of the plaintiff provide the basis for personal jurisdiction over a nonresident defendant). Because Defendant was to perform its contractual duties outside of New Mexico, we conclude that Plaintiff has failed to satisfy the final *Pelton* factor.

## 2. Due Process Requirement of Minimum Contacts

{19} As we previously observed, New Mexico equates the transaction of business with the due process standard of minimum contacts. Consequently, we do not look at the alleged transaction of business in isolation, without also determining whether Defendant's acts established the minimum contacts necessary to satisfy constitutional due process concerns. *See Roman Catholic Diocese of Boise,* 121 N.M. at 742, 918 P.2d at 21; *Visarraga v. Gates Rubber Co.,* 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct.App.1986) (" '[T]he question of personal jurisdiction over out-of-state residents involves more than a technical 'transaction of any business' ... within New Mexico. The meaning of those terms, in our statute, is to be equated with the minimum contacts sufficient to satisfy due process.' " (quoting *Tarango v. Pastrana,* 94 N.M. 727, 728, 616 P.2d 440, 441 (Ct.App.1980))). Although Plaintiff correctly cites *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), for the proposition that "[a] defendant corporation need not be physically present in the forum state to be subject to [personal] jurisdiction," the due process analysis considers factors other than the defendant's location.

{20} "A defendant will be found to have sufficient minimum contacts to satisfy due process where the defendant has a connection with the forum state and has acted in the state in such a manner that the defendant 'should reasonably anticipate being haled into court there.' " *DeVenzeio,* 121 N.M. at 809, 918 P.2d at 725 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). One of the primary factors in determining whether "minimum contacts" have been established is "the degree to which defendant purposefully initiated its activity within the State." *Customwood Mfg., Inc.,* 102 N.M. at 57, 691 P.2d at 58.

{21} Defendant's acts in New Mexico consisted of communications with Plaintiff's representatives by telephone, fax and mail from California. We have previously recognized that "[o]rdinarily, the use of

mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the 'purposeful availment' prong of a minimum-contacts analysis." *De-Venzeio*, 121 N.M. at 809–10, 918 P.2d at 725–26; *see also Afirm. Inc. v. Frazee Paint & Wallcovering Co.*, 624 F.Supp. 973, 976 (N.D.Ill.1985) (recognizing recent cases that "have held that mere telephone calls alone cannot establish jurisdiction over a foreign defendant"); *Ideal Ins. Agency, Inc.*, 157 Ill.Dec. 284, 572 N.E.2d at 358 ("[E]xchanges of telephone calls and correspondence are not enough to support jurisdiction.").

{22} That recognition is particularly significant in this case where Defendant did not solicit, advertise or otherwise initiate the business transaction with Plaintiff in New Mexico. The business transaction between Plaintiff and Defendant originated in California where Plaintiff's representatives were attending a conference on the Wildcat. The only authority Plaintiff cites in support of its contention that telephone calls and fax transmissions are sufficient to support minimum contacts is *Sanchez v. Church of Scientology*, 115 N.M. 660, 857 P.2d 771 (1993). We are not persuaded by Plaintiff's argument that, had the defendant in *Sanchez* actually contacted the plaintiff and intentionally inflicted emotional distress, our Supreme Court would have approved the extension of personal jurisdiction over defendant and would have held that telephone calls were sufficient to support minimum contacts. The Court in *Sanchez*, however, approvingly quoted the principle that generally the use of mail, telephones, or other communications do not satisfy the minimum contacts required by due process.

{23} We are likewise not persuaded by Plaintiff's argument that Defendant availed itself of the benefits and privileges of New Mexico law by stopping payment on the royalty check. *See Phoenix Am. Corp. v. Brissey*, 46 N.C.App. 527, 265 S.E.2d 476, 479–80 (1980) (stating that stopping payment on a check through a bank in the forum state is insufficient to establish the necessary connection between the transaction and the state).

{24} Instead, we consider this appeal similar to *Customwood Mfg., Inc.*, 102 N.M.

at 57, 691 P.2d at 58, where the defendant was awarded a contract to build a house in Nevada. At the time the defendant bid on the contract, it was told that the plaintiff had already been selected to supply the doors for the house. *See id.* After the defendant was awarded the contract, it mailed a purchase order to the plaintiff in New Mexico for the doors. *See id.* Later, the defendant periodically initiated telephone calls to the plaintiff and mailed payments to the plaintiff for the doors received. *See id.* The plaintiff filed a complaint against the defendant and attempted to assert jurisdiction over the defendant in New Mexico, arguing that the defendant transacted business within New Mexico by mailing the purchase order to plaintiff. *See id.* Our Supreme Court held that "the purchase order mailed by defendant [was] more accurately characterized as a confirmation of a business deal already established, than as an initiation of a deal by defendant." *Id.* at 58, 691 P.2d at 59. The court thus held that the defendant did not purposefully avail itself of the privilege of conducting business in New Mexico, and the defendant's telephone calls and mailing of payments to the plaintiff in New Mexico did not change that. *See id.*

{25} Similarly, in this case, Heming's telephone call to Clement in New Mexico was a continuation of business negotiations already initiated in California. Heming's telephone calls to Clement in New Mexico did not constitute the initiation of a deal by Defendant. "The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Sanchez*, 115 N.M. at 664, 857 P.2d at 775.

{26} We therefore hold that Defendant did not transact business in the state to satisfy our long-arm statute. We also conclude that Plaintiff has not established sufficient minimum contacts by Defendant within New Mexico to satisfy due process and allow for the exercise of jurisdiction over Defendant.

### 3. Other Alleged Transactions of Business

{27} Part of the test for determining personal jurisdiction requires that there be a

close relationship between the claimed transaction of business in the forum state and the pled cause of action. Plaintiff claims that Defendant transacted business in New Mexico by virtue of its selling products from local software outlets. Plaintiff further contends that Defendant's business relationship with DataSafe constituted the transaction of business in New Mexico. However, this is insufficient grounds upon which to exercise New Mexico jurisdiction over this matter.

{28} Our state's long-arm statute requires that the pled cause of action arise from the *same* transaction of business by which the nonresident-defendant submitted to the jurisdiction of the forum state. *See* § 38–1–16(A); *see also Winward,* 83 N.M. at 472, 493 P.2d at 957 ("The statutory phrase 'arising from' requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the ... courts."). That Defendant may have had other contacts with New Mexico from which no pled cause of action arises does not satisfy this jurisdictional prerequisite.

## III. CONCLUSION

{29} In summary, we hold that Plaintiff failed to show that Defendant engaged in the transaction of business in the state to satisfy our long-arm statute's requirements. We also hold that Plaintiff did not establish the minimum contacts to satisfy due process requirements. We thus conclude that the trial court's dismissal of Plaintiff's complaint for lack of personal jurisdiction was proper. We therefore affirm the trial court.

{30} IT IS SO ORDERED.

ARMIJO, J., concurs.

HARTZ, Judge (concurring in result only).