[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS (DOCKET ENTRY NO. 101)
The defendant, Paul Lane, a Connecticut resident, placed an advertisement in Hemming's Magazine for a vintage race car. (Plaintiff's affidavit dated April 5, 2000, ¶ 6.) Upon reading this advertisement in New Mexico, the plaintiff John Lorenzo, a New Mexico resident, contacted the defendant concerning the race car. (Plaintiff's affidavit, ¶ 8-9.) After negotiations, the plaintiff agreed to go to Connecticut in order to purchase the car for $6,000 and transport it back to New Mexico. (Defendant's affidavit dated June 14, 2000, ¶ 3-5.) Upon returning to New Mexico, the plaintiff discovered that the transmission was missing. (Plaintiff's Affidavit, ¶ 8.) As a result, the plaintiff filed a law suit in the Second Judicial District Court of New Mexico. The defendant failed to appear on December 29, 1999, and, as a result, the plaintiff obtained a default judgment of $8,167.84 against the defendant.
Pursuant to General Statutes § 52-607,[1] on March 3, 2000, the plaintiff filed a complaint to domesticate the judgment against the defendant. The plaintiff alleges that the prior complaint was personally served on the defendant on October 27, 1999. The plaintiff alleges moreover, that the case was scheduled for trial in New Mexico on December 29, 1999 and the defendant failed to appear. As a result of his failure to appear, the New Mexico court rendered a default judgment against the defendant, specifically finding that it had "jurisdiction over the parties and subject matter." (Plaintiff's complaint, Exhibit A.) The plaintiff is seeking to have this judgment recognized as binding in the state of Connecticut, allowing him to seek money damages in the amount of the judgment, interest at the rate of 15% as set by the New Mexico court and costs.
On April 6, 2000, the defendant filed a motion to dismiss on the ground that the New Mexico judgment is void due to a lack of personal jurisdiction and, therefore, cannot be recognized by Connecticut under the full faith and credit clause of the United States constitution. As CT Page 13360 required by Practice Book § 10-31, the defendant filed a memorandum in support of his motion to dismiss, along with an affidavit, and the plaintiff timely filed a memorandum in opposition. Each party also timely filed supplements to their memoranda of law.
A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. Gurliacciv. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. Cumberland Farms, Inc. v. Groton, 247 Conn. 196, 214
n. 15, 719 A.2d 465 (1998). The pleadings must be construed broadly in favor of the plaintiff. See Shay v. Rossi, 253 Conn. 134, 140, ___ A.2d ___ (2000).
The defendant moves to dismiss on the ground that the default judgment rendered in New Mexico is void because the New Mexico court lacked personal jurisdiction over him, and, as a result, the judgment cannot be recognized under the full faith and credit clause of the United States constitution.[2] Since the interpretation of the full faith and credit clause is a question of federal law, Connecticut courts are bound by the decisions of the Supreme Court of the United States concerning the criteria for application of the clause. Packer Plastics, Inc. v.Laundon, 214 Conn. 52, 55, 570 A.2d 687 (1990). As a matter of federal law, the full faith and credit clause requires a state court to accord the judgment of another state the same credit, validity and effect as the state that rendered the judgment would give it. Id., 56, citingUnderwriters National Assurance Co. v. North Carolina Life Accident Health Ins. Guaranty Assn., 455 U.S. 691, 704, 102 S.Ct. 1357,71 L.Ed.2d 558 (1982)
The defendant challenges the jurisdiction of this court by collaterally attacking the New Mexico court's finding of jurisdiction over him. To be successful a collateral attack must prove a judgment void, not merely voidable. Rathkopf v. Pearson, 148 Conn. 260, 265, 170 A.2d 135 (1961). Under federal rules, whenever a court lacks jurisdiction in the prior proceeding, the judgment will be void. See Packer Plastics, Inc. v.Laundon, supra, 214 Conn. 56. A party can therefore defend against the enforcement of a foreign judgment on the ground that the court that rendered the judgment lacked personal jurisdiction, unless the jurisdictional issue was fully litigated before the rendering court or the defending party waived the right to litigate the issue. Id.
In collateral attacks against foreign judgments, the party attacking CT Page 13361 the judgment has the heavy burden of proving that the court lacked personal jurisdiction. See id., 57. The party attacking the judgment will carry this burden "whether the judgment at issue was rendered after full trial on the merits or after an ex parte proceeding." (Emphasis added.) Id. When a Connecticut court decides the issue of personal jurisdiction in a motion collaterally attacking a foreign judgment, the court must look to the law of the foreign forum. See Smith v. Smith, 174 Conn. 434,438, 389 A.2d 756 (1978). Therefore, this court must evaluate the law of New Mexico to determine if the New Mexico court had personal jurisdiction over the defendant.
New Mexico appellate courts state that "[i]n order to ascertain whether personal jurisdiction exists over an out-of-state defendant, [the New Mexico] Supreme Court has approved a three-part test, inquiring whether (1) the acts of the defendant are specifically set forth in this state's long-arm statute, (2) the plaintiff's cause of action arises out of and concerns such alleged acts, and (3) the defendant's acts establish minimum contacts to satisfy constitutional due process concerns." CabaLtd. Liability Co. v. Mustang Software, 984 P.2d 803, 808 (N.M.Ct.App. 1999).
The first prong of the test concerns the New Mexico long-arm statute. The pertinent portion of statute provides:
 "Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated . . . thereby submits himself . . . to the jurisdiction of the courts of [New Mexico] as to any cause of action arising from: (1) the transaction of any business within this state . . . (3) the commission of a tortious act within the state."
N.M.Stat.Ann. § 38-1-16 (Michie 2000). The terms "transaction of any business" and "commission of a tortious act" are not technical terms, but are "to be equated with the minimum contacts sufficient to satisfy due process." Tarango v. Pastrana,616 P.2d 440, 441 (N.M.Ct.App. 1980), citing Telephonic, Inc. v.Rosenblum, 543 P.2d 825 (N.M. 1975) Because the acts enumerated within the statute are equated with the constitutional tests of minimum contacts, the first and third prongs of the test are synonymous; consequently, resolution of whether the New Mexico court has personal jurisdiction depends upon a minimum contacts/due process analysis.
As for the second prong of the test, the defendant's actions must relate to the cause of action. This court does find that the plaintiff's cause of action arises out of and concerns the defendant's actions. This CT Page 13362 is because the plaintiff responded to the advertisement in Hemming's Magazine placed by the defendant and negotiated the sale of the vintage race car with the defendant. Therefore, the second prong of the test is met.
Proceeding under the minimum contacts/due process analysis required by the first and third prongs of the test, the factors to consider when determining if minimum contacts exist are set forth in the case ofInternational Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154,90 L.Ed. 95 (1945). The Supreme Court there stated that
 "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Id., 316.
The Supreme Court has found that it is not the number of contacts that satisfy minimum contacts, rather it is the quality of the contact or contacts. See Id., 319. As a result, a sole contact with a state may satisfy the due process requirement of minimum contacts. See Burger KingCorp. v. Rudzewicz, 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174 85 L.Ed.2d 528
(1984); Customwood Mfg., Inc. v. Downey Constr. Co., 691 P.2d 57, 58
(N.M. 1984); Moore v. Graves, 654 P.2d 582, 584 (N.M.Ct.App. 1982)
In the present case, the defendant's contacts may have been a business transaction or that he caused the commission of a tortious act within New Mexico.[3] The main contact is the advertisement he placed in Hemming's Magazine. Hemming's Magazine has worldwide distribution and its circulation reached New Mexico. (Defendant's affidavit ¶ 7.) After the plaintiff responded to the advertisement, the defendant's subsequent contacts with New Mexico included at least eight telephone calls he made to the plaintiff negotiating the price of the race car, inquiring about whether the vehicle was complete and discussing whether the windshield was present in the car.[4] (Defendant's affidavit dated June 14, 2000, ¶ 3-5).
Telephone calls alone will not constitute sufficient minimum contacts. See Salas v. Homestake Enterprises, Inc., 742 P.2d 1049, 1050 (N.M. 1987); Caba Ltd. Liability Co. v. Mustang Software, supra, 984 P.2d 809. Also, forming a contract over the phone does not establish minimum contacts when the out-of-state party to the contract has never entered New Mexico, see id., but the "[p]lace of execution of the contract is not controlling, essential or even highly significant in making a CT Page 13363 determination." Moore v. Graves, supra, 654 P.2d 584. Minimum contacts exist when a defendant who "should reasonably anticipate being haled into court" in the foreign jurisdiction has "purposefully initiated its activity within the State." (Citations omitted; internal quotation marks omitted.) Caba Ltd. Liability Co. v. Mustang Software, supra, 984 P.2d 810.
"There is no definite formula" for determining whether a court has personal jurisdiction. Moore v. Graves, supra, 654 P.2d 584. The cases ofRoberts v. Piper Aircraft Corp., 670 P.2d 974 (N.M.Ct.App. 1983), Moorev. Graves, supra, 654 P.2d 582, and Tarango v. Pastrana, supra,616 P.2d 440, however, are instructive on the issue of whether the defendant has purposefully initiated activity within New Mexico and, therefore, established the necessary minimum contacts. In Roberts, an airplane crash case, the court discussed both "transacting any business" and "any tortious act" under the New Mexico long arm statute. One of the defendants, Custom Airmotive, was found to have minimum contacts with New Mexico because it advertised in two national trade journals and performed work for New Mexico residents. See Roberts v. Piper Aircraft Corp., supra, 670 P.2d 978. The court found that by advertising in a national trade journal, Custom Airmotive had solicited business in New Mexico. Moreover, even though the actual work that Custom Airmotive did for New Mexico residents occurred outside the state, the court found that when coupled with its solicitation of business in New Mexico, minimum contacts did exist. See id., 368.
Moore v. Graves concerned the sale of video equipment. Like the former case, the defendant in Moore advertised his goods in a trade magazine. See Moore v. Graves, supra, 654 P.2d 583. After citing numerous New Mexico cases on the subject of minimum contacts and personal jurisdiction, the court listed several factors that could constitute transacting business, and thus minimum contacts, and several factors that were not considered transacting business under the New Mexico long-arm statute. The court found that telephone and mail contacts alone are not enough to establish minimum contacts, but "[p]lacing magazines in the national channels of commerce and sold in New Mexico, the contacts of which caused injury" did constitute minimum contacts. Id., 584. Also, soliciting business constituted minimum contacts. See id. As a result, the New Mexico court concluded that it had jurisdiction over the defendant in Moore.
Finally, in the case of Tarango v. Pastrana, which concerned the "tortious act" portion of the long-arm statute, the court stated that when a New Mexico resident seeks out-of-state medical services, that conduct will not create sufficient minimum contacts. It distinguished the case before it from "a case involving voluntary interstate . . . economic activity . . . which is directed at the forum state's markets." TarangoCT Page 13364v. Pastrana, supra, 616 P.2d 442.
This court is of the opinion that the three cited New Mexico cases demonstrate that the defendant had minimum contacts with New Mexico. By placing an advertisement in Hemming's Magazine, the defendant purposefully initiated activity within New Mexico. Because of the holdings inRoberts, Moore and Tarango, the New Mexico courts would find that Lane had sufficient minimum contacts with New Mexico to establish personal jurisdiction in New Mexico.
In his affidavit, the defendant states that it would be too burdensome for him to defend a suit in New Mexico. (Defendant's affidavit dated June 19, 2000 ¶ 11.) While Supreme Court cases have mentioned the burden on the defendant as a potential factor in determining personal jurisdiction, see Burger King Corp. v. Rudzewicz, supra, 471 U.S. 476-77, this issue is not properly before this court. Once a court has determined that a defendant had minimum contacts, no court has thereafter found that the burden on the defendant defeats personal jurisdiction.
Under federal and New Mexico law, the defendant has established minimum contacts with New Mexico because he solicited business in New Mexico and the allegedly wrongful conduct of plaintiff's lawsuit was based upon those contacts. Accordingly, defendant's motion to dismiss is hereby DENIED.
MELVILLE, J.