# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 20, 2018

**NO. A-1-CA-36402**

**MANUEL EDEL NAVARRETE RODRIGUEZ, Individually and as Personal Representative of the Estate of EDGAR NAVARRETE RODRIGUEZ, Deceased,**

Plaintiff-Appellee,

v.

**FORD MOTOR COMPANY,**

Defendant-Appellant,

and

**LUIS A. PONCE,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Law Offices of James B. Ragan
James B. Ragan
Corpus Christi, TX

Arrazolo Law, P.C.
Gilbert Arrazolo
Albuquerque, NM

for Appellee

Hogan Lovells US LLP
Sean Marotta
Washington, DC

Rodey, Dickason, Sloan, Akin and Robb, P.A.
Jeffrey M. Croasdell
Albuquerque, NM

Snell & Wilmer LLP
Todd E. Rinner
Albuquerque, NM

for Appellant

**OPINION**

**VANZI, Chief Judge.**

{1}     In this appeal, we consider whether Ford consented to general personal jurisdiction in New Mexico courts when it registered to do business here. To answer this question, we must determine whether the United States Supreme Court's decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), and this Court's decision in *Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, 116 N.M. 229, 861 P.2d 270, remain binding precedent in light of the evolution of general jurisdiction jurisprudence found in *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945), and *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). We recognize the tension between the two lines of cases. Nevertheless, because we conclude that both *Pennsylvania Fire* and *Werner* are still binding, we conclude that Ford consented to general jurisdiction in New Mexico.

{2}     The district court found that New Mexico could exercise specific personal jurisdiction, but not general personal jurisdiction, and therefore denied Ford's motion to dismiss for lack of personal jurisdiction. Because we conclude to the contrary—that Ford consented to general jurisdiction—we affirm the denial of Ford's motion to dismiss but for a different reason than relied on by the district court. We do not reach the issue of specific jurisdiction.

**BACKGROUND**

{3}    "Where, as here, the district court bases its ruling on the parties' pleadings, attachments, and non-evidentiary hearings, . . . [we] construe th[ose] pleadings and affidavits in the light most favorable to the complainant[.]" *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 6, 304 P.3d 18 (internal quotation marks and citation omitted). Edgar Navarrete Rodriguez (Decedent), a New Mexico resident, purchased a 2000 Ford F-250 (the F-250) from a private seller in New Mexico. Decedent later died in a single vehicle accident when the roof structure of the F-250 collapsed after the vehicle rolled over on New Mexico State Road 206. Manuel Edel Navarrete Rodriguez, as personal representative for Decedent's estate, (Plaintiff) filed this wrongful death action against Ford, claiming that the F-250's roof structure was defectively designed. In the complaint, Plaintiff claimed that the district court had jurisdiction over Ford "by virtue of its manufacture, and distribution of the vehicle and by virtue of Ford's overall conduct in conducting business within the state." He also alleged that "Ford designed, tested, approved, manufactured, marketed, distributed, and sold the subject F-250 and its components for sale in New Mexico and elsewhere throughout the United States." Finally, Plaintiff alleged that "Ford . . . is a foreign corporation and can be served through its registered agent . . . located . . . [in] New Mexico."

**{4}** Ford filed a motion to dismiss for lack of general or specific personal jurisdiction. While Ford did not contest any of the facts asserted by Plaintiff, Ford argued that the district court did not have specific personal jurisdiction because Plaintiff's claims did not arise out of any in-state activities, as the F-250 was not designed, manufactured, sold, or serviced by Ford in New Mexico. Although it acknowledged that it "interjected its products into the stream of commerce knowing full well its products would be sold by independent dealers in New Mexico," Ford argued that its in-state activities did not lead to Plaintiff's claims because the F-250 was designed in Michigan, assembled in Kentucky, and sold by Ford to an independent Ford dealership in Arizona. Ford also argued that general jurisdiction was lacking because "Ford was not incorporated in New Mexico and does not have its principal place of business here."

**{5}** Plaintiff did not contest any of Ford's asserted facts. However, Plaintiff argued that the district court had specific personal jurisdiction due to Ford's substantial contacts with New Mexico and Ford's placement of the F-250 "into the stream of commerce under circumstances such that Ford should reasonably anticipate being haled into court in New Mexico to answer claims about the failure of that product in New Mexico." In support of his argument, Plaintiff provided an affidavit detailing the following connections Ford had with New Mexico: (1) Ford has at least thirteen official Ford dealerships in New Mexico; (2) Ford maintains an

interactive website where New Mexico consumers can purchase Ford automotive parts, search inventory of Ford vehicles in the state, obtain coupons and discounts, find safety recall information, and apply for credit for vehicle purchases; (3) Ford targets New Mexican consumers through marketing techniques such as sponsoring local professional bull riding championships; and (4) Ford has "in-forum advertising and defense and indemnity contracts with its dealerships" and is a "frequent" litigant in New Mexico.

{6}     The district court held a non-evidentiary hearing on the motion and concluded that it had specific, but not general, personal jurisdiction over Ford. Ford filed a motion for reconsideration. After another non-evidentiary hearing, the district court denied Ford's motion for reconsideration. However, the district court certified its order for interlocutory appeal, which we granted. After initial briefing was complete, we requested simultaneous supplemental briefing on the "viability and applicability of *Werner*" and "whether, under *Werner*, [Ford] consented to general jurisdiction in New Mexico courts by registering in compliance with Article 17 of the Business Corporation Act [(the Act)], NMSA 1978, §§ 53-11-1 to 53-18-12 (1967, as amended through 2003)."

**DISCUSSION**

{7}     "In reviewing an appeal from an order granting or denying a motion to dismiss for lack of personal jurisdiction, the determination of whether personal

4

jurisdiction exists is a question of law, which an appellate court reviews de novo when the relevant facts are undisputed." *CABA Ltd. Liab. Co. v. Mustang Software, Inc.*, 1999-NMCA-089, ¶ 9, 127 N.M. 556, 984 P.2d 803. As we explain, we conclude that Ford consented to general jurisdiction in New Mexico under *Werner*. We therefore affirm the district court's denial of Ford's motion to dismiss, but for a different reason. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). Given our conclusion, we need not address Ford's arguments related to specific jurisdiction.

**Preliminary Matters**

{8}     We begin by addressing whether this Court's review is limited by preservation principles or the scope of interlocutory appeal. First, to the extent Ford argues that this Court should not address whether Ford consented to general jurisdiction because Plaintiff failed to raise the issue of consent in the district court, we disagree that this fact precludes our review of the issue here. This Court has "broad discretion to decide jurisdictional issues on appeal." *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2008-NMCA-153, ¶ 35, 145 N.M. 328, 198 P.3d 354. Although the district court did not address specifically whether registration by Ford

indicated consent to jurisdiction, it found that Ford is registered in New Mexico and made findings, which are undisputed, about Ford's other activities in New Mexico. Thus, the factual record is adequately developed for our review of this question and remand for a hearing on the legal significance of undisputed facts would be duplicative and wasteful. *See id.* (considering personal jurisdiction issue in light of evidence produced at trial because remand for a hearing on jurisdiction "would be duplicative—and possibly futile"). Ford points to *Chaleunphonh v. Parks & Recreation Division*, in which this Court stated that reversing on a ground not raised below is "especially inappropriate when the ground requires a factual predicate and the party who prevailed below had no reason to make a record regarding the factual predicate." 1996-NMCA-066, ¶ 14, 121 N.M. 801, 918 P.2d 717. Here, Ford prevailed in the district court on the issue of general jurisdiction based on minimum contacts, but it did not dispute the factual predicate underlying consent by registration, i.e., that it registered in New Mexico. Moreover, Ford provided a supplemental brief on consent by registration and, therefore, was not blindsided by the issue. Consideration of this issue is therefore not unfair to Ford.

{9}    Second, in an interlocutory appeal, as here, this Court's review is "limited to the issues fairly contained in the order[,]" although "we are not confined to the particular questions the district court certified" for appeal. *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 8, 320 P.3d 482. In other words, an appellate court can

6

decide issues other than those certified, so long as they are not "wholly unrelated to the issues identified by the district court" in its order. *Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 19, 142 N.M. 557, 168 P.3d 129. Here, the district court considered and ruled on both general and specific jurisdiction. Because the district court granted Ford's motion to dismiss as to general jurisdiction and denied Ford's motion as to specific jurisdiction, Ford appealed only the latter portion of the district court's order. Nevertheless, the question of general jurisdiction based on registration is not "wholly unrelated" to personal jurisdiction generally or "to the issues identified by the district court" in its order. *See id.*

**Jurisdiction**

{10}     "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The "limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Thus, a key aspect of all personal jurisdiction analyses is the "fairness" and "reasonableness" of subjecting the defendant to the state's jurisdiction. *World-Wide Volkswagen*, 444 U.S. at 292. Jurisdiction is fair and reasonable when "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there."

*Id.* at 297. "[R]equiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign" provides "predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (alterations, internal quotation marks, and citations omitted). Hence, "[t]he primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum [s]tate." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, ___ U.S. ___, ___, 137 S. Ct. 1773, 1779 (2017); *see World-Wide Volkswagen*, 444 U.S. at 294 ("[T]he Due Process Clause 'does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.' " (quoting *Int'l Shoe*, 326 U.S. at 319)).

{11}     The exercise of general personal jurisdiction is fair when the defendant is "at home" in the state—e.g., it is incorporated or has its principal place of business in the state. *Daimler*, 571 U.S. at 137. On the other hand, "specific personal jurisdiction" is fair where (1) the defendant has purposefully availed itself of the benefits of the market in the forum state (i.e., has "minimum contacts" with the state); (2) the plaintiff's claims arise out of or relate to the defendant's contacts

8

with the forum state; and (3) it is not otherwise unfair or unreasonable to exert jurisdiction over the defendant. *Burger King*, 471 U.S. at 473-76.

**Consent to Jurisdiction by Registration**

{12}     Personal jurisdiction is also fair when the defendant consents to it. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) ("A person may submit to a [s]tate's authority in a number of ways. There is, of course, explicit consent."). "A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *see id.* at 704 (collecting cases and stating that "the [United States Supreme] Court has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures"). In some states, compliance with the state's statute requiring registration to do business in the state constitutes consent to that state's jurisdiction. Kevin D. Benish, *Pennoyer's Ghost: Consent, Registration Statutes, and General Jurisdiction After Daimler AG v. Bauman*, 90 N.Y.U.L. Rev. 1609, 1647-61 (2015) (providing a survey of state statutes and their effect). The United States Supreme Court recognized consent by registration as a valid avenue for general jurisdiction at least as early as 1917 in *Pennsylvania Fire*, 243 U.S. at 95. In that case, the plaintiff sued the defendant, an Arizona corporation, in Missouri for claims related to an insurance policy covering

9

buildings in Colorado. *Id.* at 94. The defendant, "in compliance with [a Missouri statute], had filed with the superintendent of the insurance department a power of attorney consenting that service of process upon the superintendent should be deemed personal service upon the company so long as it should have any liabilities outstanding in the state." *Id.* The defendant argued that the statute pertained only to "suits upon Missouri contracts, and that if the statute were construed to govern the present case, it encountered the [Fourteenth] Amendment by denying to the defendant due process of law." *Id.* at 94-95. Noting that the Missouri Supreme Court had found that the statute was not limited to suits related to Missouri contracts and that it did not deny the defendant due process, the United States Supreme Court agreed that the statute's "language . . . rationally might be held to [apply to the suit at issue]," and that such a "construction did not deprive the defendant of due process of law." *Id.* at 95; *see Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755, 767-68 (Fed. Cir. 2016) (O'Malley, J., concurring) (discussing *Pennsylvania Fire* and the history of consent to jurisdiction through registration), *cert. denied sub nom. Mylan Pharm. v. Acorda Therapeutics*, 137 S. Ct. 625 (2017); Jack B. Harrison, *Registration, Fairness, and General Jurisdiction*, 95 Neb. L. Rev. 477, 510 (2016) (same).

{13}     Much has changed in the jurisprudence of personal jurisdiction since 1917. However, in the 100-plus years since *Pennsylvania Fire* was decided, the Supreme

10

Court has not expressly overturned it. *Acorda Therapeutics*, 817 F.3d at 755. Instead, it was clarified in *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213, 215-16 (1921), and reaffirmed in *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 175 (1939). In spite of this fact, some courts have held that *Pennsylvania Fire* has been overtaken by more recent pronouncements on jurisdiction, particularly those found in *International Shoe* and *Daimler*. *See, e.g.*, *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 145 n.119 (Del. 2016) (collecting cases holding that *Daimler* negates consent by registration); Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1361 (2015) (discussing critiques of the consent by registration approach in light of case law). However, we agree with those courts holding to the contrary that *Pennsylvania Fire* and its progeny are still binding precedent. *See Brieno v. Paccar, Inc.*, No. 17-cv-867 SCY/KBM, 2018 WL 3675234, at *2 (D.N.M. Aug. 2, 2018), *motion for reconsideration denied*, 17-cv-00867-SCY/KBM (Nov. 5, 2018); *Genuine Parts*, 137 A.3d at 148-49 n.130 (Vaughn, J., dissenting) (collecting cases holding that consent by registration remains valid after *Daimler*); Harrison, *supra*, at 510-12 (discussing consent by registration generally and cases following and departing from *Pennsylvania Fire*).

{14}    In *International Shoe*, the Court held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within

11

the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316 (internal quotation marks and citation omitted). The Court thus departed from *Pennoyer v. Neff*, 95 U.S. 714, 714-15 (1877), under which jurisdiction of the state court rested on a defendant's "presence" in the forum. *Int'l Shoe*, 326 U.S. at 316; Harrison, *supra*, at 485-88 (discussing the effect of *International Shoe* on *Pennoyer*). Although *International Shoe* changed the analysis for jurisdiction, it did so in the context of situations in which there had not been consent. The Court noted that the defendant there "had no agent within the state upon whom service could be made[,]" and also held that a corporation may have sufficient activities in a state to satisfy due process when those activities are "continuous and systematic" and "also give rise to the liabilities sued on, *even though no consent to be sued or authorization to an agent to accept service of process has been given*." *Int'l Shoe*, 326 U.S. at 312, 317 (emphasis added). By specifying that jurisdiction may be proper "even though" there was no consent, the *International Shoe* Court acknowledged that consent remains a separate and distinct avenue to jurisdiction. *See Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 467 (D.N.J. 2015) (stating that "*International Shoe* itself clearly reflects that the Supreme Court's jurisdictional determinations related to cases where no consent to be sued or authorization to an agent to accept service of

12

process has been given" and that "it cannot be genuinely disputed that consent, whether by registration or otherwise, remains a valid basis for personal jurisdiction following *International Shoe*" (internal quotation marks and citation omitted)). *International Shoe*, therefore, did not undermine *Pennsylvania Fire*'s holding regarding consent by registration.

{15}     In *Daimler*, decided in 2014, the Court addressed general jurisdiction where the plaintiffs' "claims involv[ed] only foreign plaintiffs and conduct occurring entirely abroad." 571 U.S. at 125. The Court noted that "general and specific jurisdiction have followed markedly different trajectories post-*International Shoe*. Specific jurisdiction has been cut loose from *Pennoyer*'s sway, but we have declined to stretch general jurisdiction beyond limits traditionally recognized." *Daimler*, 571 U.S. at 132. The Court held that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction" because "[t]hose affiliations have the virtue of being unique— that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 137 (omission, alteration, internal quotation marks, and citation omitted). Noting that general jurisdiction is not limited to the place of incorporation and principal place of business, the Court nevertheless held that the "exercise of general jurisdiction in every [s]tate in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping." *Id.* at

13

138 (internal quotation marks omitted). It concluded that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the [s]tate are so continuous and systematic' as to render [it] essentially at home in the forum [s]tate.' " *Id.* at 138-39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Neither the plaintiff nor its subsidiary, were incorporated in California, nor did either have its principal place of business there. *Id.* at 139. The Court declined to hold that sales by the plaintiff's subsidiary in California were sufficient for general jurisdiction because such a holding would mean that "every other [s]tate in which [the subsidiary]'s sales are sizable" would also have general jurisdiction. *Id.* "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Id.* (quoting *Burger King*, 471 U.S. at 472). The Court emphasized that its holding did not rest on the quantity of in-forum contacts alone, but instead was based on "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 139 n.20. It concluded, "A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* In sum, the

*Daimler* Court "substantial[ly] curb[ed] the exercise of general jurisdiction" by limiting the types of contacts adequate to satisfy due process. *Bristol-Myers Squibb Co.*, ___ U.S. at ___, 137 S. Ct. at 1784 (Sotomayor, J., dissenting).

{16} However, *Daimler* neither cited *Pennsylvania Fire* nor addressed its holding. Harrison, *supra*, at 523 ("[T]he *Daimler* Court never stated that it was overruling *Pennsylvania Fire* or cases that came after it, like *Neirbo*."). Indeed, the *Daimler* Court implicitly acknowledged that a defendant might consent to jurisdiction. In discussing the state of the law of general jurisdiction after *International Shoe*, the Court stated that "[t]he Court's 1952 decision in *Perkins v. Benguet* [*Consolidated*] *Mining Co.*, [342 U.S. 437 (1952)] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation *that has not consented to suit in the forum.*" *Daimler*, 571 U.S. at 129 (emphasis added) (alteration, internal quotation marks, and citation omitted). By citing *Perkins* as "the textbook case" for situations not involving consent, the Court indicated that its ensuing discussion applying *Perkins* also presumed the absence of consent. "Thus, *Daimler* did not impliedly eradicate the distinction between cases involving an express consent to general jurisdiction and those analyzing general jurisdiction in the absence of consent; it actually maintains it." *Acorda Therapeutics*, 817 F.3d at 769 (O'Malley, J., concurring); *accord Perrigo Co. v. Merial Ltd.*, No. 8:14-CV-403, 2015 WL 1538088, at *7 (D. Neb. Apr. 7, 2015) ("*Daimler* only speaks to

15

whether general jurisdiction can be appropriately exercised over a foreign corporation that *has not consented to suit* in the forum. It does nothing to affect the long-standing principle that a defendant may consent to personal jurisdiction." (citations omitted)); *Forest Labs., Inc. v. Amneal Pharm. LLC*, No. 14-508-LPS, 2015 WL 880599, at *13 (D. Del. Feb. 26, 2015) (stating that "in the one instance in which *Daimler* mentions consent to jurisdiction—in the context of a discussion regarding general jurisdiction—it does so to *distinguish* the concept of consent from the circumstances relevant to its decision"); *Webb-Benjamin, LLC v. Int'l Rug Grp., LLC*, 192 A.3d 1133, 1139 (Pa. Super. Ct. 2018) ("*Daimler* does not eliminate consent as a method of obtaining personal jurisdiction."). Moreover, the *Daimler* Court had no occasion to address the impact of consent by registration because the forum state (California) did not construe its registration statute as giving rise to jurisdiction. *Acorda Therapeutics*, 817 F.3d at 769 (O'Malley, J., concurring); *AM Tr. v. UBS AG*, 681 F. App'x 587, 588-89 (9th Cir. 2017) ("California does not require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business.").

{17}    In sum, both *International Shoe* and *Daimler* recognized that consent presented a distinct avenue for jurisdiction, but neither directly addressed consent by registration given that such a circumstance was not present in the facts of those

cases. Hence, neither of those cases explicitly overrules the Supreme Court's earlier holdings that one way in which a corporate defendant may consent to jurisdiction is by registering in the forum state. *See Mitchell v. Eli Lilly & Co.*, 159 F. Supp. 3d 967, 977 (E.D. Mo. 2016) (stating that "the Supreme Court's recent decisions do not sub silentio reverse" cases recognizing consent by registration).

{18}    Moreover, even if we viewed consent by registration as conflicting with the spirit of *Daimler*, we see no basis for departure from *Pennsylvania Fire* and its progeny. The Supreme Court has stated that a lower court should not, "on its own authority . . . take[] the step of renouncing [Supreme court precedent]." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Instead, "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions." *Id.* Similarly, in *State Oil Co. v. Khan*, the Court observed that the court of appeals was correct in applying a principle laid down in an earlier case, despite its "infirmities, and its increasingly wobbly, moth-eaten foundations," because "it is this Court's prerogative alone to overrule one of its precedents." 522 U.S. 3, 20 (1997) (alteration, internal quotation marks, and citation omitted); *accord In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 2866166, at *3 (D. Kan. May 17, 2016) ("[The court] is not

prepared to ignore such Supreme Court precedent based on speculation about how the Court might view jurisdiction in contexts other than that discussed in *Daimler*." (internal quotation marks omitted)); *Novartis Pharm. Corp. v. Mylan Inc.*, No. 14-777-RGA, No. 14-820 RGA, 2015 WL 1246285, at *3 (D. Del. Mar. 16, 2015) (stating that it is not "appropriate . . . to 'overrule' Supreme Court precedent that the Supreme Court has not overruled"); *cf. Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (stating that the New Mexico Court of Appeals "remains bound by [New Mexico] Supreme Court precedent" even if this Court harbors reservations about that precedent's continuing validity).

{19}     Having concluded that *Pennsylvania Fire* remains binding precedent, we turn to Ford's argument that registration statutes such as the Act are unconstitutional because they violate the unconstitutional conditions doctrine or the dormant Commerce Clause. Ford first argues that consent by registration violates the unconstitutional conditions doctrine, which "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Ford maintains that the registration statute here "bar[s] companies, as a condition of doing business in New Mexico, from asserting their federal due process rights to resist state-court jurisdiction over matters unconnected to their activities in New Mexico." For support, Ford relies on

18

*Southern Pacific Co. v. Denton*, 146 U.S. 202, 203 (1892), in which the statute violated the unconstitutional conditions doctrine because it not only "regulated procedure for suit but sought to deny foreign corporations access to the federal courts." *Neirbo*, 308 U.S. at 173 (discussing *Denton*). In *Neirbo*, the Court distinguished *Denton*, stating that the statute there presented "an entirely different situation" and went on to affirm that "[a] statute calling for . . . designation [of an agent] is constitutional, and the designation of the agent a 'voluntary act,' " and also that such designation is "actual consent . . . to be sued in the courts" of the state. *Id.* at 175 (quoting *Pa. Fire*, 243 U.S. at 96); *see Acorda Therapeutics*, 817 F.3d at 770 n.1 (O'Malley, J., concurring) (stating that "the Supreme Court has upheld the validity of consent-by-registration statutes numerous times since the development of the unconstitutional conditions doctrine"); *In re Syngenta*, 2016 WL 2866166, *3 (discussing *Neirbo* and rejecting the argument that consent by registration violates the unconstitutional conditions doctrine by impinging on a defendant's "right to be free from general jurisdiction" unless certain requirements are satisfied).

{20}     Ford next argues that consent by registration is unconstitutional because it "unduly burdens interstate commerce" and hence violates the dormant Commerce Clause. U.S. Const. art. I, § 8, cl. 3. "The Commerce Clause not only empowers Congress to regulate [c]ommerce among the several [s]tates, but also denies the

19

[s]tates the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce[.]" *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1254 (10th Cir. 2000) (omission, internal quotation marks, and citations omitted). "This implied restraint upon the states is often referred to as the negative or 'dormant' aspect of the Commerce Clause." *Id.* "Where the burden of a state regulation falls on interstate commerce, restricting its flow in a manner not applicable to local business and trade," *Bendix Autolite Corp. v. Midwesco Enters.*, 486 U.S. 888, 891 (1988), the statute or regulation violates the dormant Commerce Clause unless "it serves a 'legitimate public interest,' its effects on interstate commerce are only 'incidental,' and the burden imposed on interstate commerce is not 'clearly excessive in relation to the putative local benefits.' " *Am. Target Advert.*, 199 F.3d at 1254 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

{21}     Some scholars and courts have stated that the dormant Commerce Clause limits general jurisdiction derived from consent by registration to actions in which the plaintiff is a resident of the forum state or suffered injury in the forum state. For instance, in *In re Syngenta*, the court held that "the Kansas registration statute, as applied . . . to claims by the *nonresident plaintiffs*, discriminates against interstate commerce in practical effect, and thus is invalid under the [dormant] Commerce Clause." 2016 WL 2866166, at *5 (emphasis added). This is so because "a state has no legitimate interest in hosting litigation between two out-of-state

20

parties that does not arise from either parties' activities in the state." *Id.* at *6. The court acknowledged that "it may be argued that a state has an interest in allowing a corporation to be sued locally on claims arising out of the corporation's activities there (specific jurisdiction), or in providing a forum for claims by its residents[.]" *Id.* Because the plaintiffs there had identified no "legitimate state interest" in the nonresidents' claims against nonresident defendants, however, jurisdiction over the nonresident defendants was an unjustified burden on interstate commerce. *Id.*; *cf. Genuine Parts*, 137 A.3d at 128, 143 (holding that a Delaware registration statute was an undue burden as to a defendant incorporated in Georgia where the plaintiffs were residents of Georgia and injured in Florida).

{22}    A different result was reached in *Hegna v. Smitty's Supply, Inc.*, No. 16-3613, 2017 WL 2563231 (E.D. Pa. June 13, 2017). There, the defendant argued that "the imposition of general personal jurisdiction over it based on its registration to do business in this Commonwealth violates the dormant Commerce Clause." *Id.* at *4. The court rejected this argument, stating that the defendant had "not identified any authority in which a registration statute that imposes general personal jurisdiction over foreign corporations that register to do business in a state has been found to violate the dormant Commerce Clause in a lawsuit *brought by a state resident*." *Id.* at *5 (emphasis added). Because the plaintiff there was a

Pennsylvania resident, the court concluded that the registration statute at issue did not violate the dormant Commerce Clause as applied. *Id.*

**{23}** Unlike *In re Syngenta* and *Genuine Parts*, and like *Hegna*, Decedent was a New Mexico resident. Moreover, he suffered injury in this state. New Mexico has an interest in providing a forum for its residents and those injured here. *See Zavala v. El Paso Cty. Hosp. Dist.*, 2007-NMCA-149, ¶ 31, 143 N.M. 36, 172 P.3d 173 (stating that "New Mexico certainly has an interest in providing its residents with a forum to allow resolution of conflicts" and that "a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders" (internal quotation marks and citation omitted)); *Int'l Milling Co. v. Columbia Transp. Co.*, 292 U.S. 511, 520 (1934) (stating that "[r]esidence [of the plaintiff] . . . is a fact of high significance" in a Commerce Clause analysis); John F. Preis, *The Dormant Commerce Clause As A Limit on Personal Jurisdiction*, 102 Iowa L. Rev. 121, 143 (2016) (observing that "states have a legitimate interest in providing a forum for redress to residents injured in and out of state . . . and nonresidents injured in state"). Thus, assuming without deciding that the Act burdens interstate commerce, we conclude that the burden is justified by New Mexico's interest in providing access to the courts for residents and those injured in the state. *See* Preis, *supra*, at 138, 143 (observing that "jurisdiction-via-registration" laws "have the 'practical effect' of discriminating against out-of-state

22

companies" but that such "effects will nonetheless be tolerable when the plaintiff is a state resident (whether injured in or out of state) or a non-resident injured in state").

**Consent by Registration in New Mexico**

{24}     Consistent with *Pennsylvania Fire*, then, we turn to whether Ford consented to jurisdiction here by complying with the registration requirements in the Act. Whether consent to jurisdiction is inherent in corporate registration depends on language of the forum state's registration statute itself or on how a state court has construed it. *See Robert Mitchell Furniture Co.*, 257 U.S. at 215-16 (stating that the "purpose in requiring the appointment of such an agent is primarily to secure local jurisdiction in respect of business transacted within the [s]tate" and that jurisdiction under the statute may be extended to business conducted elsewhere only if the law "expressly or by local construction gives to the appointment [of an agent] a larger scope"); *Brieno*, 2018 WL 3675234, at *2.

{25}     This Court construed the Act in *Werner*. There, the plaintiff, a New Mexico resident, sued the defendant, which was incorporated in Delaware, for injuries suffered in Georgia. 1993-NMCA-112, ¶ 2. This Court held that the defendant had consented to jurisdiction in New Mexico by registering pursuant to the Act. *Id.* ¶ 11. In its analysis, the Court construed Sections 53-17-2, -11, and -15 of the Act.

*Werner*, 1993-NMCA-112, ¶¶ 10-11. In relevant part, Section 53-17-2 provides that

> [a] foreign corporation which has received a certificate of authority under the Business Corporation Act shall . . . enjoy *the same, but no greater, rights and privileges as a domestic corporation* . . . ; and, except as otherwise provided in the Business Corporation Act, is subject to the *same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character*.

(Emphases added.) Section 53-17-11 states that

> [t]he registered agent appointed by a foreign corporation authorized to transact business in this state shall be an agent of the corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served.

Finally, Section 53-17-15(A)(4) provides that, to withdraw its registration,

> the foreign corporation shall deliver to the commission [secretary of state] an application for withdrawal, which shall set forth . . . a statement that the corporation revokes the authority of its registered agent in this state to accept service of process and consents that service of process in an action, suit or proceeding *based upon a cause of action arising in this state during the time the corporation was authorized to transact business in this state* may thereafter be made on the corporation by service thereof on the secretary of state[.]

(Emphasis added) (first alteration in original).

{26} The *Werner* Court first noted that Section 53-17-11, which provided for service of process on a "registered agent appointed by a foreign corporation," could be a basis for jurisdiction over a foreign corporation if the Legislature so intended. *Werner*, 1993-NMCA-112, ¶ 8; *see id.* ("One of the most solidly established ways of giving such consent is to designate an agent for service of

24

process within the State." (internal quotation marks and citation omitted)). It then found that, because "[S]ection 53-17-2 defines the power of a registered foreign corporation as the same but no greater than that of a domestic corporation[,]" the Legislature intended "to equalize foreign and domestic corporations operating within New Mexico with respect to 'rights and privileges,' as well as 'duties, restrictions, penalties and liabilities,' " including being subject to state court jurisdiction. *Werner*, 1993-NMCA-112, ¶ 10 (quoting Section 53-17-2). Finally, it found that, because Section 53-17-15(A)(4)'s limiting language did not appear in Section 53-17-11, Section 53-17-11 applied "to *any* claims against a foreign corporation with a registered agent in New Mexico[,]" not just those arising from activities in the state. *Werner*, 1993-NMCA-112, ¶ 11 (emphasis added). Although the defendant had not argued before this Court that jurisdiction was barred by due process concerns, the Court stated that it "suspect[ed] that [the d]efendant recognize[d] that it has a sufficient presence in New Mexico to satisfy due process concerns." *Id.* ¶ 14. However, this Court also cited *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990), for the proposition that "when personal jurisdiction is based on consent, resort to minimum-contacts or due-process analysis is unnecessary[.]" *Werner*, 1993-NMCA-112, ¶ 14.

**{27}** *Werner* was decided in 1993. In the twenty-five years since, neither this Court nor the New Mexico Supreme Court has reversed or abrogated it. Hence,

25

*Werner* "remain[s] controlling precedent upon which we rely until overruled or reversed by [our] Supreme Court." *Gulbransen v. Progressive Halcyon Ins. Co.*, 2010-NMCA-082, ¶ 13, 148 N.M. 585, 241 P.3d 183 (stating that Court of Appeals decisions are binding even when the New Mexico Supreme Court has granted certiorari to review them). Federal district courts in this state have relied on *Werner* to find jurisdiction. *See Brieno*, 2018 WL 3675234, at *3 (discussing *Werner* and holding that a defendant had consented to general jurisdiction by registering in the state); *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, No. 10cv0401 MV/LFG, 2011 WL 13085934, at *2 (D.N.M. July 29, 2011) (same), *aff'd in part, rev'd in part on other grounds*, 703 F.3d 488 (10th Cir. 2012).

{28}    Importantly, the *Werner* decision gives companies notice that registration under the Act and continued compliance with its reporting requirements, indicates consent to general jurisdiction. *Cf. Burger King*, 471 U.S. at 472 (stating that the Due Process Clause "requir[es] that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign" (alteration, internal quotation marks, and citation omitted)); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 637 (2d Cir. 2016) (discussing due process concerns when, at the time the defendant "registered to transact business in Connecticut in 1995, the statute was neither explicit about the scope of jurisdiction conferred, *nor had there*

26

*issued an authoritative state judicial decision construing the statute*"[1] (emphasis added)); *Forest Labs.*, 2015 WL 880599, at *12 (stating that the defendant had fair notice that registration entailed consent to jurisdiction because a state court had so construed the registration statute in 1988 and, therefore, "when [the defendant] was considering whether to comply with the Delaware registration statute in 2010, it could not have been taken by surprise"); *see generally* § 53-17-17 (stating that the certificate of authority may be revoked if an annual report is not timely filed).

{29}    To the extent Ford asks that we overrule *Werner* because it is "out of step with other Model Business Corporation Act [s]tates," we decline to do so. *See* §§ 53-17-2, -11, -17, compiler's notes (stating that these sections were "derived from . . . the [American Bar Association] Model Business Corporation Act"). First, a careful review of the cases Ford cites in support of this proposition reveals that

---

[1] In *Brown*, the Second Circuit Court of Appeals concluded that "in the absence of a clear legislative statement and *a definitive interpretation by the Connecticut Supreme Court* and in light of constitutional concerns, we construe Connecticut's registration statute . . . not to require registrant corporations . . . to submit to the general jurisdiction of Connecticut courts." *Id.* at 641 (emphasis added). Although the Connecticut Appellate Court had construed the Connecticut statute and stated that compliance with it constituted consent, the *Brown* court found this statement to be "less than fully supported" dicta. *Id.* at 635 n.15. It therefore went on to construe the statute itself and found that the statute did not give notice that compliance with it would entail consent to general jurisdiction. *Id.* at 637. Hence, *Brown* is distinguishable on its facts. Moreover, the *Brown* court also stated that "a carefully drawn state statute that expressly required consent to general jurisdiction as a condition on a foreign corporation's doing business in the state, at least in cases brought by state residents, might well be constitutional" but did not reach this question. *Id.* at 641.

most of those courts construed their statutes in light of *Daimler* and held that consent by registration was inconsistent with its holding. *See Genuine Parts*, 137 A.3d at 141 (examining the Delaware registration statute in the context of *Daimler*); *Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 164 A.3d 435, 446 (N.J. Super. Ct. App. Div. 2017) ("In light of *Daimler*, we reject [an earlier] holding as allowing general jurisdiction solely based on the fiction of implied consent by a foreign corporation's compliance with New Jersey's business registration statute."); *Segregated Account of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 2017 WI 71, ¶ 25, 898 N.W.2d 70 (citing *Daimler* and stating that it "give[s] preference to prevailing due process standards when interpreting a contemporary statute for the first time"). Unlike these courts, we have concluded that *Daimler* did not address consent to jurisdiction or overrule *Pennsylvania Fire*. *But see Missouri ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) (concluding that the plain language of the registration statute does not "provide an independent basis for . . . personal jurisdiction").

{30}     Second, while some states have construed their statutes differently, others have reached results similar to *Werner*. For instance, the Supreme Court of Minnesota, construing its statute based on the Model Business Corporation Act, held that it is "well-established . . . that a state may exact from the nonresident, as a condition of performing some activity in the state, consent to personal jurisdiction"

28

and that "Minnesota has done so by requiring the appointment of an agent for service of process as a condition to transacting business in the state." *Rykoff-Sexton, Inc. v. Am. Appraisal Assocs.*, 469 N.W.2d 88, 90 (Minn. 1991) (citing Minn. Stat. §§ 303.03, .06, .13 (1990)); *see also Perrigo*, 2015 WL 1538088, at *7 ("[I]t is equally clear that designating an agent upon whom process may be served operates, under Nebraska law, as a consent to jurisdiction."); *Bohreer v. Erie Ins. Exch.*, 165 P.3d 186, 191-94 (Ariz. Ct. App. 2007) (holding that registration constitutes consent to jurisdiction); *Allstate Ins. Co. v. Klein*, 422 S.E.2d 863, 864-65 (Ga. 1992) (same); *Read v. Sonat Offshore Drilling, Inc.*, 515 So. 2d 1229, 1230-31 (Miss. 1987) (same); *Green Mountain Coll. v. Levine*, 139 A.2d 822, 824-25 (Vt. 1958) (same); *cf. Allstate Ins. Co. v. Electrolux Home Prods.*, No. 5:18-cv-00699, 2018 WL 3707377, at *5 (E.D. Pa. Aug. 3, 2018), (applying Pennsylvania's registration statute); *Kearns v. N.Y. Cmty. Bank*, 400 P.3d 182, at *5 (Kan. Ct. App. 2017) ("When a corporation applies to do business in Kansas, it consents to personal jurisdiction. Consenting to jurisdiction in Kansas by applying to do business in the state does not violate the requirements of due process."); *Davenport v. State Farm Mut. Auto. Ins. Co.*, 756 S.W.2d 678, 679, 684 (Tenn. 1988) (holding that "the consent theory as a basis of in personam jurisdiction over foreign corporations" was recognized in the state and not limited by an 1887 statute restricting jurisdiction over foreign corporations to transactions or activities

occurring within the state). Moreover, contrary to Ford's suggestion that *Werner* is an outlier, "[m]ost states . . . have not yet clarified the jurisdictional consequences of their registration statutes." Benish, *supra*, at 1647; *see* Model Business Corporation Act Annotated §§ 15.05, 15.10, 15.31 (Am. Bar Ass'n 2013) (listing states that have adopted relevant portions of the Model Business Corporation Act). Hence, although we agree that "[o]ur interpretation of [a model act] should effectuate the purpose of uniformity with other states that have likewise adopted the . . . [a]ct," there appears to be little uniformity on this issue. *See Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105, ¶ 5, 149 N.M. 287, 248 P.3d 329 (citing NMSA 1978, § 12-2A-18(B) (1997)). Given this context, Ford's argument is unavailing.

**Ford Consented to General Jurisdiction by Complying With the Act**

{31}    Here, the district court found, and Ford conceded, that Ford is registered in New Mexico as required by Section 53-17-11. Hence, Ford consented to jurisdiction in New Mexico and was on notice that it should "anticipate being haled into court" in New Mexico. *See World-Wide Volkswagen*, 444 U.S. at 297; *see also Forest Labs.*, 2015 WL 880599, at *12 (holding that the defendant had fair notice where a state court had construed the statute twenty-two years prior to the defendant's registration); *cf. Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) (stating that "[t]he [registration] statute . . . gave [the defendant] notice that

30

[it] was subject to personal jurisdiction in Pennsylvania and thus it should have been reasonably able to anticipate being haled into court in Pennsylvania" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{32}** We recognize that courts differ on the breadth and impact of *Daimler*. When squarely presented with the issue, the United States Supreme Court may hold that registration pursuant to a state statute, does not, by itself, indicate consent to general jurisdiction that is consistent with due process. But we will not divest New Mexico courts of jurisdiction in anticipation of a holding that may or may not manifest, especially when there is binding precedent directly on point. Hence, we decline to depart from *Pennsylvania Fire* and *Werner*. Here, Ford had notice through *Werner* that registration and compliance with the Act would subject it to the jurisdiction of New Mexico courts. In addition, the accident giving rise to the present suit occurred in New Mexico to a New Mexico resident. Hence, New Mexico has a substantial interest in adjudicating the suit. *See Zavala*, 2007-NMCA-149, ¶ 31. We therefore conclude that Ford consented to general jurisdiction in New Mexico courts by registering to do business here and appointing an agent for service of process under the Act. The district court's denial of Ford's motion to dismiss for lack of jurisdiction is affirmed.

**{33}** **IT IS SO ORDERED.**

                      _____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**J. MILES HANISEE, Judge**

_____

**STEPHEN G. FRENCH, Judge Pro Tem**